## D. W. PORTER *v.* LIBERTY ALDRICH.

*Pleading. Impounding. Trespass. Statute.*

The word *enclosure* as used in the act of 1797, (Slade's St., p. 450, § 5; Revised St. p. 412, § 4,) relating to impounding, imports land enclosed by something more than the imaginary boundary line, that there should be some visible, tangible obstruction, such as a fence, hedge, ditch or something equivalent, for the protection of the premises against encroachment by cattle. The word *close* is more comprehensive; it embraces land owned by the party or of which he is in the rightful possession, although embraced only by an imaginary boundary line which defines its territorial limits. A plea therefore, under this statute, in which the word *close* is used for *enclosure*, as descriptive of the *locus in quo*, would be insufficient.

Such plea would also be insufficient under the present statute, (G. S., p. 617, § 4,) because, as indicated by § 1, p. 625, G. S., only occupied land is deemed an *enclosure*.

In looking at the whole law on the subject of fences and impounding beasts, in connection with the history of the legislation on the subject, it is fairly to be inferred that by the existing statutes it was not intended to extend this summary remedy by impounding, to beasts *damage feasant* upon wild, uncultivated, unimproved and unoccupied land lying open and common.

Neglect to give notice for the *appointment of appraisers*, does not vitiate the proceedings. It only operates as a waiver of damages, but not of the costs and expenses. But the party who impounds another's beasts, acting in his own behalf, becomes a trespasser *ab initio* by neglecting to give notice of the impounding, to the owner of the beasts, if known, and is subject to a penalty for such neglect.

But if he acts as the mere servant, and at the immediate request of the owner, his employer in the transaction, or at the request of one standing in the place of the principal in interest, he is not responsible for the neglect to give notice.

But where the owner resides out of the state, and the defendant was his appointed agent to take care of the premises, and protect them from damages from cattle running at large, and for seizing and impounding, for and in the name of the owner, all cattle found trespassing upon the close, the plaintiff has a right to treat him as standing in the place of his principal, so far as to hold him responsible for the omission to give notice of the impounding.

TRESPASS for two oxen. The defendant pleaded three several pleas in bar, to all of which the plaintiff demurred specially. The court at the June Term, 1865, POLAND, Ch. J., presiding, *pro forma*, decided the pleas sufficient,—to which the plaintiff excepted.

Porter *v.* Aldrich.

The first special plea set forth, " that one Francis Fisher, of Bos-
" ton, in the state of Massachusetts, before and at the time of com-
" mitting the said supposed trespass, mentioned in the plaintiff's
" declaration, was lawfully possessed of a certain [close, piece or
" parcel of land, with the appurtenance, situate and being in Troy
" aforesaid, commonly known and called the company farm, and the
" said defendant before and at the time of committing the said sup-
" posed trespasses in the plaintiff's declaration mentioned, was the
" legally appointed and constituted agent of the said Fisher, for the
" purpose of keeping the fences on and upon said close, piece and
" parcel of land in proper repair, and protecting said piece, parcel,
" or close of land from damage or injury by or from cattle running
" at large, and for seizing, leading, and driving away and impound-
" ing for and in the name of the said Fisher, any and all cattle found
" trespassing in, on, or upon the said close, piece or parcel of land,
" and because said cattle in the declaration mentioned, before　　*
"　　*　　*　　were wrongfully in the said close, piece or parcel
" of land of the said Fisher, in which　　*　　*　　*　　eating
" and depasturing and treading down the grass and herbage of the
" said Fisher then and there growing, and doing damage to said
" Fisher, he, the defendant, agent as aforesaid of the said Fisher,
" for and in behalf of the said Fisher, at the said time when　　*
"　　*　　*　　seized and took the said cattle in the declaration
" mentioned, in the said close, piece or parcel of land of the said
" Fisher, so doing damage therein, as a distress for said damage and
" as agent of said Fisher as aforesaid, led and drove away the same
" out of the same close in which said supposed trespass was commit-
" ted, to one Edward Stevens, a legally constituted public and com-
" mon pound-keeper in and for said town of Troy, and then and
" there at said Troy as agent of the said Fisher, for and in behalf
" of said Fisher, and in no other manner, relation, or right whatever,
" delivered said cattle in the declaration mentioned, to the said
" Stevens, pound-keeper as aforesaid, etc., etc."

The second special plea set forth that one Sumner was the
appointed agent of Fisher for the letting, improving, cultivating and
protecting said close and the interests of Fisher therein, and that
the defendant at the request and by the direction of Sumner and in
his name drove off said cattle and caused them to be impounded.

· The third plea was substantially like the second, except it averred
that Sumner was the owner of the close.

The grounds of demurrer relied upon in argument were, *first*, that
the plea did not describe the close on which the cattle were found as
an *enclosure*. *Second*, that the defendant did not allege that he
caused any notice of his pretended impounding to be given to the

plaintiff, in manner and form as the statute provides, or in any other manner.

*Benjamin H. Steele,* for the plaintiff.

The right to distrain beasts taken *damage feasant* has always been limited in this state to cases warranted by statute.

I. By G. S., p. 617, § 4, the right to impound is limited to beasts found upon an *enclosure* doing damage. The same limitation has always existed in this state in all the variations of the statute, and every precedent to be found in the reports of an avowry or plea has recognized it.

A "close" is according to jurists and lexicographers an "interest in the soil," Bouvier, Burrill and Cruise specially distinguish it from an enclosure. Being a more general term than enclosure it cannot be substituted for it in the plea, unless limited by such qualifying expression as would make that particular close an enclosure. It is not limited at all.

The word, though it may not originally have been a law term has, in Vermont, become such with a technical legal signification. *Mooney* v. *Maynard,* 1 Vt. 473.

The fence law immediately follows the statute regarding pounds, estrays and lost property, and the two have always been construed together. The legislature in this act, G. S.p. 625, § 1, recognized the above definition by extending it, providing that lakes, ponds and rivers shall be deemed legal fences, and "all occupied land bordering upon highways shall be deemed the enclosure of the owner or occupant."

The plea is therefore bad because it does not describe the close on which the cattle were found as an *enclosure,* G. S., p. 617, § 4 ; *Mooney* v. *Maynard,* 1 Vt. 473 ; G. S., p. 625, § 1 ; *Moore* v. *Robbins,* 7 Vt. 364 ; *Davis* v. *Campbell,* 23 Vt. 236 ; *Gipson* v. *Bump,* 30 Vt. 175 ; *Clark* v. *Adams,* 18 Vt. 425 ; *Holden* v. *Torrey,* 31 Vt. 690.

II. The statute requires the impounder, not the pound-keeper, to take certain proceedings within certain time by way of notice to the owner of the beasts and appraisement of damages. It is not claimed that these proceedings were taken. The law in such case presumes

that however liable the beasts were to be impounded, the taking was not for that purpose, but was a trespass *ab initio.* *Moore* v. *Robbins,* 7 Vt. 363 ; *Sutton* v. *Beach,* 2 Vt. 42 ; *Bond* v. *Wilder,* 16 Vt. 393 ; *Stewart* v. *Martin,* 16 Vt. 397.

III.   One of the defendant's pleas sets him up as the servant of the impounder, not of the pound-keeper.   Whatever may be the law where the trespass alleged is a lawful act *per se*—done under the authority of a public officer—there is no decision which holds the servant or assistant of a private person irresponsible for his participation in the act which by the neglect or misconduct of the principal proves to be a trespass at the outset or *ab initio.*

An impounder is not at all a public officer, and therefore the cases *Wheelock* v. *Archer,* 26 Vt. 383, and *Oystead* v. *Shed,* 12 Mass. 509 are not in point.


*W. D. Wilson* and —— *Young,* for the defendant.

The words in the defendant's plea, "a certain close, piece or parcel of land situated in Troy, in the county of Orleans, commonly known and called the company farm," are sufficiently certain that the *locus in quo* was an enclosure and improved and cultivated land.

There was not at the time of the taking of these cattle, nor is there now any statute law of this state that requires the enclosure to be legally fenced in order to give the owner or occupant of the same the right to impound beasts found therein doing damage.

This was once the law in this state, but the General Statutes have entirely removed all such restrictions and limitations.   Slade's St. Statutes p. 452, § 8 ;   Revised Statutes, p. 413, § 16 ;   Compiled Statutes, p. 519, § 16 ;  G. S, ch. 100.   And it was upon the law as laid down in the former statutes that the cases of *Mooney* v. *Maynard,* 1 Vt. 470, and *Hooper* v. *Kittredge,* 16 Vt. 677, were decided.   The statute law in this state with reference to the right to impound, prior to the General Statutes, was widely at variance with the common law.   And we think by the General Statutes we have adopted the principle of the common law giving the right to impound in all cases where cattle are found doing damage upon the improved and cultivated land of the owner or occupant ; and by the

General Statutes the right to impound is concurrent with the right to maintain trespass, *quare clausum,* for damage done by cattle to improved and cultivated land.   *Gipson* v. *Bump,* 30 Vt. 175.

The defendant justifies the taking of the cattle as the servant of the impounder who was the owner or occupant of the close where said cattle were found *damage feasant.*   The statute makes the impounder a public officer, and the defendant as servant of the impounder is not liable for any neglect of the impounder in not carrying out the provisions of the statute relative to the impounding of cattle.

When the defendant, as servant of the impounder, had done what was requested of him, and that legally, he cannot be made chargeable as a trespasser *ab initio* by reason of the failure of the imimpounder to carry out and comply with the provisions of the impounding law ; and hence the defendant as servant of the impounder need not justify as to any proceedings subsequent to his own act.   *Wheelock* v. *Archer and Wilder,* 26 Vt. 380 ; *Oystead* v. *Shed,* 12 Mass. 511.

The opinion of the court was delivered by

PECK, J.   This case was argued at the last term of this court upon demurrer to the defendant's special pleas.   Numerous special causes are assigned in the demurrer, but such only need be noticed as are relied on in argument.

The first question is whether the word *close,* used in the pleas, is such a description of the premises in which the cattle were taken *damage feasant,* as brings the case within the statute giving the right of impounding, that is, whether the word *close* is equivalent to the word *enclosure* used in the statute.   The right to impound depends upon the statute, and the plea must allege such facts as bring the case within it.   The statutes on the subject of impounding cattle *damage feasant,* have been and should be construed in connection with the statutes in reference to fences.   The act of 1797 Slade's St., p. 450, § 5, provided, "that it shall and may be lawful for any person to impound any swine, neat cattle, horses, sheep or other creatures that shall be found *damage feasant,* or doing damage in his

enclosure." Under this statute it was held in *Mooney* v. *Maynard*, 1 Vt. 417, that the right to impound cattle *damage feasant* did not exist unless the *locus in quo* was enclosed by a legal fence, except such fences as the owner or keeper of the cattle, or the adjoining proprietor, was bound to keep in repair. This case in effect decides that *enclosure* in the statute means land enclosed by a legal fence, except such part of the fence as the owner or keeper of the cattle, or the adjoining proprietor, is bound to repair. The Revised Statutes of 1839 has substantially the same provisions in relation to fences as were in force at the time of the decision of *Mooney* v. *Maynard*, except a provision that excuses the land owner, (so far as relates to this question,) from fencing on the highway. Rev. St. p. 412, § 4, provides that. "any person may impound any beast found in his *enclosure* doing damage"—thus using the same term to designate the *locus in quo* that had been used in the act of 1797, and defined in *Mooney* v. *Maynard*. It also enacts in substance the decision in *Mooney* v. *Maynard*, with a slight modification corresponding with the alteration of the law as to fence upon the highway. It is in section 16, page 519, which provides that, no person shall have a right to impound any beast taken doing damage, unless the fence to the enclosure, in which such beast was taken, shall be legal and sufficient, except fences adjoining the highway, and fences that the owner of such beast is required by law to make and repair. The same provisions are in the Compiled Statutes. This shows clearly that the intention was that the term *enclosure* in section 4 should have the same limited construction that had been given to it under the statute of 1797. The word *enclosure* therefore imports, land enclosed with something more than the imaginary boundary line, that there should be some visible or tangible obstruction, such as a fence, hedge, ditch or something equivalent, for the protection of the premises against encroachment by cattle. Under this statute it is evident the term *close*, used in the plea, is too comprehensive, it embraces land owned by the party or of which he is in the rightful possession, although enclosed only by the imaginary boundary line which defines its territorial limits. The plea therefore under this statute would be insufficient.

But the act of 1853 regulating the subject of fences, in terms repeals section 16 of the Revised Statutes, above mentioned, and that section is not contained in the General Statutes under which the question in this case arises.   It is insisted on the part of the defendant that however it might have been under the former law, that since the repeal of section 16 of the Revised Statutes, and under the present law on the subject of fences, the rule is different ; that under the former statutes the owner or occupant of land was bound to fence his neighbors cattle out, but that under the present laws the owner or keeper of cattle is bound to fence them in, and that if he suffers them to stray off his own land on to the land of others, it is a trespass, and the cattle may be lawfully impounded.   This is true so far as relates to occupied land, except as to division fences.  If under the General Statutes a party has a right to impound cattle taken *damage feasant* on his land whether it is occupied land, or unoccupied, wild and common, and without reference to any duty on his part to fence the land, then it is immaterial whether the term *enclosure* or *close* is used in the plea, as either would be sufficient.   The question is, does the right to impound exist to this extent under the present statutes.   The provision giving this right is, "any person may impound any beast found in his enclosure doing damage." (G. S., p. 617, § 4.)   The same language is used as that in the previous statutes.   Had the legislature intended to extend the right to impound in all cases, whether the *locus in quo* was occupied or unoccupied, fenced or unfenced, the term enclosure probably would have been omitted and a more comprehensive term been substituted, some term that had not already received the limited construction that had been put upon that word in the former statutes.  Section 1 of chapter 102, General Statutes, page 625, has a bearing on the question.   After providing what description of fences "shall be deemed legal and sufficient," it proceeds, "except fences on the sides of highways, which the owners of lands are not bound to build and sustain, and all *occupied* land bordering upon highways shall be deemed to be the enclosure of the owner or occupant ;" thus indicating that only occupied land is deemed an enclosure.   There is no apparent reason why the word " *enclosure* " in section 4 of chapter 100, giving the right to

impound, should not be understood in the same sense. On the contrary the owners of adjoining occupied lands are bound by the present statute to make, each his portion of the division fence, and neither can lawfully impound the cattle of the others, if they enter upon his land through his, the impounder's, neglect in regard to his portion of such fence. To this extent it is the duty of the impounder, as between him and the adjoining proprietor, to enclose his land, although it is otherwise as between him and other persons.

In looking at the whole law on the subject of fences and impounding beasts, in connection with the history of the legislation on the subject, it is fairly to be inferred that by the existing statutes it was not intended to extend this summary remedy by impounding to beasts *damage feasant*, upon wild, uncultivated, unimproved and unoccupied land lying open and common.

The plaintiff's cattle may have been doing damage in the defendant's *close* as alleged in the pleas, and yet not have been in the defendants *enclosure*, within the meaning of the statute. The pleas in this respect are defective, as there are no other words of description which supply the defect. Had the term *enclosure* been used in the pleas, instead of the word close, it would have obviated this objection without any allegation in relation to fences.

The next objection taken to the pleas is that no notice to the plaintiff is alleged of the impounding and for the appointment of appraisers, as the statute requires to be given. The neglect to give notice for the appointment of appraisers does not vitiate the proceedings. It only operates as a waiver of damages, but not of the costs and expenses. But the party who impounds another's beasts, acting in his own behalf, becomes a trespasser *ab initio* by neglecting to give notice of the impounding, to the owner of the beasts, if known, and is subject to a penalty for such neglect. In many cases it is sufficient for a defendant in trespass to plead such facts as justify the original trespass; and if the plaintiff relies on a subsequent act which renders the defendant a trespasser *ab initio*, he must reply it. But this redress by impounding is a summary proceeding without process, the giving of notice thereof is an affirmative act required by statute to be done almost immediately, within twenty-four hours, and the per-

formance of this duty is material to the interests of the owner of the cattle, and is to be regarded as a part of the impounder's justification, to be by him alleged and proved. An officer can not justify under *returnable process* without alleging a return of it, If the defendant, in this case, is affected by this neglect to give notice, the same as if he had impounded the cattle in his own behalf, then the pleas are bad for the omission to allege notice of the impounding. But if the defendant had no interest in the proceedings, but acted in driving the cattle to the pound and delivering them into the custody of the pound-keeper, as the mere servant, and at the immediate request of the owner, his employer in the transaction, or at the request of one standing in the place of the principal in interest, he is not responsible for the neglect to give notice, no more than an assistant of a sheriff can become a trespasser by relation by reason of the subsequent neglect of the sheriff to return the process. His act being legal at the time it was done, and he not being charged by his employment with the duty of giving notice, he can not be made a trespasser by the subsequent neglect of others whose duty it was to give the notice. A hired man or son of the owner or occupant of the close, a mere servant, who acts under the direction of his employer, (the impounder,) can not thus be made a trespasser by reason of the subsequent neglect of the impounder. The last two pleas show that the defendant stood in this relation; and therefore this objection to them is not well taken.

The first special plea alleges that one Fisher of Boston, Massachusetts, was possessed of the close called the company farm, and that the defendant was the appointed agent of Fisher for the purpose of keeping the fences in proper repair and protecting the premises from damages from cattle running at large, and for seizing and impounding, for and in the name of Fisher, all cattle found trespassing upon the close ; and that he impounded the cattle in behalf of Fisher by virtue of the agency alleged. This was such a general agency in relation to the farm as imposed by the defendant, as between him and his principal, the duty, if he impounded cattle doing damage, to give the necessary notice to legalize the proceedings, as it is to be intended from this plea that the defendant acted in

Porter *v.* Aldrich.

impounding the beasts, not under the immediate and specific directions of Fisher given on the occasion in question, but in the absence of Fisher, and under his general authority previously delegated. The owner of the premises residing out of the state, and the defendant acting under this general authority, the plaintiff has a right to treat him as standing in the place of his principal so far as to hold him responsible for the omission to give notice of the impounding. If the defence rested upon this plea alone, the defendant would be a trespasser *ab initio ;* but this is unimportant to the decision of the case, because the other two pleas are free from this objection. But as the objection that the pleas do not allege the *locus in quo* to have been an *enclosure,* or *occupied* or *improved* land, and as this objection applies to all the special pleas, the judgment of the county court is reversed, and pleas adjudged insufficient, and the cause remanded with leave to the defendant to replead on the usual terms as to costs.