# WINDSOR COUNTY,

## FEBRUARY TERM, 1882.

[CONTINUED FROM PAGE 384, *ante*.]

---

### CHARLES H. DUDLEY *v.* JOHN McKENZIE.

*Replevin. Impounding.* Damage Feasant.

Actual damage must be proved to justify impounding cattle taken *damage feasant*.
The cattle cannot be held for costs where there is no actual damage.

REPLEVIN for eighty-four sheep. Heard on the report of a referee, May Term, 1881, TAFT, J., presiding. The court rendered judgment that forty-four of the sheep were unlawfully taken and detained by the defendant, and the remainder were lawfully taken and detained, and that neither party recover costs. Plaintiff excepted. The case appears in the opinion.

*Gilbert A. Davis*, for the plaintiff.

*William E. Johnson*, for the defendant.

The opinion of the court was delivered by

ROWELL, J. The referee reports that there was no proof before him that the defendant suffered any damage or incurred any cost by reason of the sheep getting into his pasture. Nominal damages, however, will be presumed, for the law implies a damage from every injury. The question arises, therefore, Does the right of distress for *damage feasant* exist when no actual damage is committed by the beasts distrained? This question seems not to have been decided in this State, and turns on the construction to be given to our statute.

Distraining cattle for *damage feasant* is a proceeding, as Blackstone says, by which the law allows a man to be his own avenger, or to minister redress to himself. The rule arises from the necessity of the thing itself, as otherwise it might be impossible at a subsequent time to ascertain whose cattle committed the damage; and the purpose is, to obtain satisfaction for the damage sustained. In *Vasper* v. *Edwards*, 12 Mod. 660, Lord HOLT says that " *damage feasant* is the strictest distress there is, for the thing distrained must be taken in the very act; for if they are once off, though on fresh pursuit, you cannot distrain them. If tender be made of damages before the taking, the taking is unlawful; if after the taking and before impounding, then the detention after it is unlawful." And in 9 Co. [*22a], it is said that "if one comes to distrain for *damage feasant* and sees the cattle, and the owner drives them off, he cannot distrain them *damage feasant*, but is put to his action of trespass, for the cattle ought to be *damage feasant* at the time of the distress." In *Clement* v. *Milner*, 3 Esp. 95, Lord ELDON ruled that if the defendant, in the act of coming up in order to distrain, had actually got into the field where the animal was committing the damage, before it was driven back into plaintiff's field, he might justify driving it back into his own field and thence to the pound. But we apprehend that it is not necessary in all cases that the thing distrained be *damage feasant* at the time of the distress, but that distress may be made, to prevent *further* damage. *Reynell* v. *Champernoon*, Cro. Car. 228, was trespass for cutting nets and oars. The defendant justified for that the plaintiff was *endeavoring* therewith to row upon his water and to catch his fish. The justification failed, but the court said that defendant might have taken the nets and oars and detained them *damage feasant*, for the purpose of stopping plaintiff's *further* fishing. And in *Wormer* v. *Briggs*, 2 C. & K. 31, where the horse had ceased doing damage at the time it was taken, Lord DENMAN, C. J., left it to the jury to say whether the taking was necessary, to prevent the horse from doing *further* damage, and on the jury's saying it was not, a verdict was directed for the plaintiff. Thus we see with what strictness the law of England has always dealt with this subject. This mode of

redress is a summary proceeding without process, hence the rea-
son for greater strictness than would otherwise be required.

Our statute provides that " a person may impound a beast
found in his enclosure *doing damage*." Not, "found in his enclo-
sure " simply ; but found there, " *doing damage*." In *Porter* v.
*Aldrich*, 39 Vt. 326, it was held that the word " enclosure," as
used in the statute, imports more than the word *close*, which em-
braces land owned or rightfully possessed by a party, although
inclosed only by the imaginary boundary line that defines its ter-
ritorial limits, but signifies land inclosed with some visible and
tangible obstruction, such as a fence, hedge, ditch, or their equiv-
alent, for the protection of the premises against cattle ; and that
it was not intended to extend this summary remedy to beasts *dam-
age feasant* on wild, uncultivated, unimproved, and unoccupied
lands lying open and common. This case indicates an intention
on the part of the court to construe the statute strictly, and to
give full effect to the language in which it is couched. If the
words, " doing damage ", are to have any effect, it would seem
that they should be construed to mean, doing actual and substan-
tial damage, to the exclusion of theoretical and presumptive dam-
age ; or, in other words, doing damage in fact only, and not dam-
age in law as well. A beast may stray into the inclosure of
another on the crust in midwinter, when it can do no possible dam-
age, and it be a technical trespass, for which nominal damages
could be recovered ; but can the beast be impounded for *damage
feasant ?* Can it be taken as a pledge for the satisfaction of dam-
ges that neither have been nor could be committed ? The costs
and expenses of impounding and keeping are only an incident,
and accrue after the right of distress has attached, and cannot
create the right. That the statute contemplates actual damage, is
shown by the fact that it provides for the appointment of ap-
praisers to ascertain the damage, and certify the amount thereof
to the pound-keeper. It is true, as held in this State, that the
impounder may waive his claim for damage ; but this does not
import that none need be sustained. In all the cases in this
State where it has been so held, it either appears or was as-
sumed that actual damage had been committed, and in none

of them was this question raised, and the result of the holding in them is, that an irregular or even a fraudulent appraisal of damages, or a waiver of damages and no appraisal, do not deprive the impounder from lawfully detaining beasts *regularly* impounded for the payment of legal costs and charges. And this may well be so, for a waiver of damages advantages the owner of the beasts. But in Maine it is held otherwise, and that a waiver of damages defeats the remedy, on the ground that the basis of the remedy is thereby abandoned and gone. *Dunton* v. *Reed*, 17 Me. 178, was a libel for a decree of forfeiture of a pair of oxen under the statute concerning pounds, which provided that beasts doing damage on improved lands inclosed with a sufficient fence, might be impounded. The libel alleged no damage, and all claim for damages was waived. It was contended on the part of the plaintiff that it was not necessary that he should *claim* damages; that it was enough that it appeared that the cattle were taken *damage feasant;* but the court said: " All the proceedings are remedial, for the purpose of giving an indemnity for the injury. When beasts are thus impounded, they are to be restrained until the damages and the charges for impounding and keeping them and all fees are paid. The expenses are incident to the remedy, which is based upon the damages sustained. Here no damage is claimed. The very ground that justifies and upholds the remedy is waived and abandoned. Tho libel does not even aver that any damage was done." *Osgood* v. *Green*, 33 N. H. 318, arose under a statute similar to ours, and is exactly in point. It was replevin for a bull. Defendant avowed the taking thereof in his close *damage feasant*. Plaintiff pleaded in bar, among other pleas, that appraisers were appointed to appraise the damages, and on hearing decided that none had been committed, to which defendant demurred. The demurrer was overruled and the plea adjudged sufficient. The court says: " On payment of the damages appraised and the charges incurred, the creatures are to be discharged from the pound; but if no damages are sustained, there are, of course, none to be paid; and the report of the appraisers in such a case is conclusive that none have been committed. When, therefore, cattle are impounded, and the appraisers

decide that no damages were done to the close of the party impounding, it follows as a proper deduction that they were illegally impounded, for they must be doing damage in his enclosure, otherwise he had no power to impound them.    Actual damages, then, are essential to a legal impounding for *damage feasant.* . . . . . If the cattle cannot be held for the damages, they certainly cannot for the costs, for the damages are the foundation of the costs, and the latter cannot exist without the former. . . . We are entirely satisfied that there is no law in this State authorizing the impounding of animals for merely nominal trespasses. . . . . The evil requires no such remedy, and it is only in cases of actual damages that a person is permitted to execute the law himself". We adopt the reasoning and the conclusion of that case, and reverse the judgment below as to the forty sheep and the costs, and hold that said sheep also were unlawfully taken and detained, and render judgment for the plaintiff to recover one cent damages (there being no finding of actual damages) and his costs.