CASE 40.—ACTION BY H. M. MINK AGAINST THE LOUIS-
VILLE & N. RY. CO. FOR DAMAGES IN DELAYING
SHIPMENT OF FREIGHT.—June 26.

# Louisville &N . R. R. Co. v. Mink

126    337
136    857

Appeal from Rockcastle Circuit Court.

L. F. JOHNSON, Special Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Carriers—Delay in Transportation—Damages.—For delay of a
    carrier in delivering freight, there may be recovered not
    only such damages as normally result therefrom, but such
    as result from special circumstances known to the carrier
    at the time of the contract.
2.  Same—Special Circumstances—Notice to Carrier.—Where
    mill machinery was shipped to be repaired, and then by a
    separate contract shipped back, to give the carrier notice of
    special circumstances from which damage would arise from
    delay in transportation, so as to make it liable therefor, it is
    not enough that the agent with whom the first contract was
    made knew thereof, there having been no delay in the first
    shipment, but the agent with whom the second contract was
    made must have been informed of such circumstances.
3.  Same — Authority of Agents — Acquiescence — Estoppel. —
    Though the agent of a carrier at a certain station resigned,
    and his resignation was accepted, yet, no one else having
    been appointed for a year, and the company having in the
    interim left the station keys with him, and he having per-
    sonally seen to billing freight, though he did not sign the
    bills of lading, and no notice of his discharge having been
    given the public, but he having been permitted to act sub-
    stantially as he had done before, the carrier was estopped by
    its acquiescence to question his authority as agent as between
    it and shippers who dealt with him.

   vol. 126—21.

4. Same—Damages—Evidence.—Plaintiff, in an action against a carrier for delay in transporting machinery for its sawmill, cannot by way of damages show loss from inability to fill a contract for lumber, because of the delay in transportation, in the absence of evidence that the carrier was notified of the fact of such contract.

J W. BROWN for appellant.

JNO. T. SHELBY of counsel.

### QUESTIONS AND AUTHORITIES.

1. Special damages not allowed against a carrier for delay in delivering goods when not informed at the time of making the contract for the shipment of the nature of the damages that may result from the delay: Amer. Exp. Co. v. Jennings, 38 S. R., 374; Patterson v. I. C. R. Co., 97 S. W. R., 426; I. C. R. Co. v. Nelson et al., 97 S. W. R., 757.

C. C. WILLIAMS for appellee.

We submit that if the presumption is that this property reached its destination within a reasonable time (and two days appears to be a reasonable time from the evidence) then the notice of special damages that the appellee would sustain by reason of the delay would not have to be given at the time or before the shipment began.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

This was an action for damages against a common carrier by the owner of a sawmill, who shipped parts of the machinery and engine from Rockcastle county to a point in Ohio for repair and return. The carrier negligently delayed the return shipment, so that the articles were lost for about two months. The plaintiff alleged that by reason of the delay a certain quantity of logs which he had on hand deteriorated in quality, to his damage in the sum of $1,000; also,

that he had lost two valuable customers, whose orders he could not fill because he could not operate his saw-mill without the machinery delayed in shipment, and thereby he suffered a further damage of $250. As to the measure of damages recoverable, the court instructed the jury as follows: "(2) The court instructs the jury that the criterion of damages is the difference in value of the logs plaintiff would have sawed on his mill during the time said engine cylinder and valve rod were unreasonably delayed, and the value of said logs at the time plaintiff could saw same after receiving said engine cylinder and valve rod. (3) Unless the jury believe from the evidence that the defendant railroad company, through or by some one of its duly authorized agents, or party as such agent, it was notified of the special importance of the shipment of the engine cylinder and valve rod to the plaintiff, the jury should find for the plaintiff only nominal damages.

The leading case as authority on this subject is Hadley v. Baxendale, 9 Ex. 341. The principles announced therein have been applied both in England and America with varying consistency ever since the opinion was rendered. Its interpretation has not always been the same; but the weight, and it may be said the result, of innumerable cases in which it has been followed since, settle the principle to be that in any breach of a contract the plaintiff may recover always such damages as normally result therefrom, or he may, by showing special facts to have been known to the defendant at the time of the contract, which would give notice to him that a breach of the contract would result in an otherwise unexpected loss, recover his special damages. Hadley v. Baxendale was very much like the case at bar. The plaintiffs were owners

of a steam mill. A shaft of their machinery was broken. They gave it to the defendant, a carrier, to take to an engineer to serve as a model for a new one which he was to make. Defendant's clerk was informed, when the contract was made for shipping the shaft, that the mill was stopped, and that the shaft must be sent immediately. The carrier delayed the delivery, and, in an action for the breach of the contract, plaintiff's claimed, as special damages, the loss of profits while the mill was kept idle. In the course of the opinion this rule was laid down: "We think the proper rule in such a case as the present is this: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated; but, on the other hand, if the special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases, not affected by any

special circumstances, from such a breach of contract, for, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them. The above principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract." The same principle was soon thereafter applied on this side by the Court of Appeals of New York, in Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718. The same court, in Booth v. Spuyten Duyvel R. M. Co., 60 N. Y. 487, thus stated the rule: "It is presumed that the parties contemplate the usual and natural consequences of a breach when the contract is made; and if the contract is made with reference to special circumstances, fixing or affecting the amount of damages, such special circumstances are regarded within the contemplation of the parties, and damages may be assessed accordingly."

The object of every rule on the subject is to ascertain that damage resulting from the breach which the parties, at the time the contract of affreightment was made, presumably had in mind. "Damage" means loss. Compensation would be inadequate that did not cover the loss sustained. It might be, in such a case as we have at bar, the deterioration of material on the mill owners' hands which was occasioned by the delay; but he might be entitled to more than his sound material, or its equivalent in money, for his object in having the material was to manufacture it into planks for sale. If he had a market for the lumber when so made, or contracts of sale already entered into, his profits, which were lost by reason of the delay in delivering the parts of the machinery,

are recoverable upon the same grounds as is the depreciated value of his logs. Both items of damage grow out of the same breach, and together constitute the loss sustained by reason of it. Each of these elements is special damage. Each is a consequence of the breach, though it may not be said to be a normal consequence, because it is not the necessary consequence. It is a natural consequence of the breach only in the light of the circumstances communicated to the defendant at the time the contract was entered into. Having in mind that the parts of machinery are detached from a sawmill, which was being operated, but was shut down while the detached parts were sent away for repair, it naturally follows that an unreasonable delay in the shipment of the article by the carrier would necessitate the mills standing idle the while, and that saw logs on hand which were subject to deterioration would depreciate in quality if the delay should be protracted. It would also naturally follow that if the mill owner had contracted to deliver lumber to builders, or wholesalers, for present delivery, an unreasonable delay would result in damages to the mill owner, because he would either lose his contracts, or their profits, or be compelled by his vendees to pay damages for the failure to deliver the lumber when it was due; but unless the carrier had notice of the conditions at the mill when it undertook to carry the article, it would not be in mind, or be a probability in the mind of the parties, that a failure to deliver the article promptly would entail either a loss of the logs, or the loss of sales of lumber to be cut from the logs.

Advancing to the next step, the notice mentioned: When and to whom should it be given, and what should it contain? As may be gathered from what

has already been said, and particularly from the authorities cited, the recovery of special damages is allowed because it was within the contemplation of the parties to the contract, and is deemed to have been in such contemplation, because having had notice of the peculiar conditions existing when it was made, the natural presumption would be that the particular loss actually sustained was to be reasonably apprehended from the defendant's breach of the contract. Hence special damages are recoverable upon the theory that they arise out of the contract. That being so, the contract must contain the essential elements to entitle the plaintiff to recover for them. One essential is the notice of the special conditions. This is bound to be so, because otherwise it would not be at all likely, and not always possible, that the parties should have had in mind the special result, as a natural or probable result of the breach. The notice is not to vary the terms of the contract, but is receivable as evidence of the surroundings of the parties, that the court may view their contract, in interpreting its terms, in the same light that the parties probably did when they entered into it. Hydraulic Eng. Co. v. McHaffie, 4 Q. B. Div. 670. Of course, if the contract provides expressly for the recovery of particular damages, which is not a limitation upon the common-law liability of the carrier against its own negligence, that would be enough in itself; but we are speaking of the implied obligation of the carrier, which enters into every contract of affreightment, that it will pay the party aggrieved—shipper or consignee—the damages which are the natural and proximate result of its breach of the contract if it breaks it, and as to what are the natural damages within the contemplation of the law, as we have seen, will depend on

the notice of the conditions existing when the contract may be entered into. It should contain such matter as would reasonably and naturally inform the carrier of the conditions and of the probable effect of its failure to comply promptly with its part of the agreement, so that it could take such measures as would enable it to comply. The notice should be given, or be in the mind of the carrier and shipper, at the time when the contract is entered into, if it is to form a part of their contract. It should be given to the carrier. As in this country the great bulk of commerce being handled by common carriers is carried by railroad corporations, whose work is in the hands of a great number of people, the notice to such carrier should be to that agent or servant whose office and duty it is to make the contract upon which the claim for loss is based. The business of railroads is so enormous, in its very nature requiring promptitude and system in handling it, that it necessitates the dividing up the work, and putting a part into one or more agents' hands for attention. It is physically impossible for one man to know or to direct the transactions of a modern railroad carrier. Hence notice to one servant as to a matter foreign to his duties is not deemed, as it is not in truth, notice to the corporation of the fact contained in it. So a notice to an agent at station A. that freight which was to be shipped from station B., where there was another agent in charge, was of a peculiar kind, or that the conditions requiring its prompt handling were so exceptional as to entail special damages, if it was not so handled, would not be notice of such condition to the carrier. We deduce from the reasoning in the authorities, and as the simple right of matter, that the notice should be given, or be in the

minds of both parties, when the contract of shipment is made, should be of such special matters as naturally and reasonably apprise the party to be charged of the probable special consequences of its breach, and should be given to the carrier (if a natural person), or to that agent who entered into the particular contract, or under whose authority it was made. We do not mean to be understood as saying that, for a tort of the carrier in failing to deliver freight, it may not be liable because of notice to an agent other than the one with whom the contract of shipment was made.

Applying these principles to the facts of our case here, we find that there is no evidence of notice having been given to appellant's agent at Cincinnati, Ohio, where the cylinder and rod were delivered to it for return to appellee. There is no complaint that the outward shipment by appellant was not promptly executed; but the charge is that the articles were delivered to appellant in Cincinnati, Ohio, by a connecting carrier, on May 16, 1904, to be carried by appellant to Mullins Station, in Rockcastle county, Ky., and that it failed for 66 days thereafter to deliver the said machinery, whereas, two days was a reasonable time within which to have delivered it . Now, it is not shown by any evidence that appellant's agent at Cincinnati knew, or was informed when he accepted the freight for shipment from that point to appellee at Mullins Station, that there existed any special condition that would involve special damages to appellee if the contract of shipment was breached by appellant. The evidence on the subject of notice was this: One Dooley was acting as appellant's agent at Mullins Station. He was informed at or about the time of the shipment of the machinery from Mullins

Station to Ohio, for repair, that appellee was operating a sawmill in the neighborhood. He had nothing to do with the return shipment. The two shipments were entirely independent transactions, so far as this record discloses. Each shipment was a separate and complete affair, and the first was a closed incident before the second was inaugurated. The contract for it was as distinctly separate from the first as if the first had never been made. We therefore conclude that the third instruction, in fixing a liability for special damages upon appellant, if any of its agents knew of the special conditions existing at the time of the shipment, is erroneous. It is also erroneous in not limiting such knowledge or notice to an existence at or prior to the making of the contract which is in suit. Illinois Central Railroad Co. v. Nelson, 97 S. W. 757, 30 Ky. Law Rep. 114.

As the case must be returned for a new trial, it is proper that other matters complained of by appellant, and appearing to the court to be material, should be noticed. Dooley had been appellant's agent at Mullins Station before the outward shipment of the machinery; but he had resigned, and his resignation had been accepted. No one else was appointed for over a year. In the interim, the company left the keys of the station with Dooley, who personally saw to billing freight, although he did not sign the bills of lading. No notice of Dooley's discharge was given to the public. He was permitted to act substantially as he had done before his resignation. These acts constituted him an agent, in our opinion, so far as the public was concerned. The question of his actual authority is not so material; but his apparent authority, exercised under circumstances where appellant had knowledge of it, is enough. Appellant's acquies-

cense, and suffering it without disavowing it, indeed, accepting and ratifying it, estop appellant from questioning the real authority of Dooley as agent, as between it and shippers who dealt with him for the company.

There was some incompetent and irrelevant evidence admitted. There was no evidence that appellant was ever notified of the fact that appellee had contracted to sell some of the lumber to be cut at his mill to the Covington parties. In the absence of such notice (given as indicated in this opinion), evidence of the prices at which the lumber was sold, or of the loss sustained by appellee because the contract of sale was not fulfilled, ought not to have been received. Horne v. Midland Railway Co., L. R. 7 C. P. 583, 8 C. P. 131; Borries v. Hutchinson, 18 C. B. (N. S.) 445, 463; Messmore v. N. Y. Shot & Lead Co., 40 N. Y. 422. Nor was it relevant that appellee was forced to sell his mill at a less price than its actual value, because he could not get back his missing machinery. If the evidence should be on another trial as it was on the last, then the jury should be instructed to award nominal damages only.

Judgment reversed, and cause remanded for a new trial under proceedings consistent herewith.