[File No. 6739.]

JAMES GLINZ and Christ Zurcher, Respondents, v. THE STATE OF NORTH DAKOTA, Doing Business as the State Hail Insurance Department, and Oscar E. Erickson, as Commissioner of Insurance of the State of North Dakota, Appellants.

(298 N. W. 238.)

Opinion filed April 19, 1941. Rehearing denied May 21, 1941.

*W. J. Austin,* Special Assistant Attorney General, for appellants.
*O. B. Benson,* for respondents.

BURR, Ch. J.   On June 21, 1937, plaintiff Glinz made two applications for state hail insurance, one covering some wheat on the northwest quarter of section 26, and one on two fields of grain, aggregating 127 acres, on the southwest quarter of section 26—all in township 160, range 79.   These applications were mailed to the Insurance Department on the morning of June 23, 1937; and were received and approved on the 24th, the only insurance involved here being on the crop on the southwest quarter.

On the evening of June 23 a hailstorm passed through this territory and over the crop.   This is conceded.   The issue, as stated by appel-

lant, is whether the crop was *struck by hail and materially damaged* "prior to the effective date and time of said policy."

The crop was injured by two hailstorms in July. When claim for loss was made under these later storms and adjusters arrived, the hailstorm of June 23 was brought to the attention of the Department. Liability was repudiated on the theory that the application for insurance was not subject to approval by the State Hail Insurance Department, owing to statutory prohibitions, though the adjusters determined the crop was injured by the July storms and adjusted the loss at $139.90.

Some three years afterwards the plaintiff commenced this action to recover on this adjustment. The case was tried to the court without a jury. The court found for the plaintiff, the findings showing "That on or about June 23, 1937, some hail fell on the crops insured but did no material damage."

The memorandum opinion, after referring to the evidence and summarizing it, says the burden of proof is upon the defendant to show that this hailstorm "must have caused material injury to the plaintiff's crops. It has failed to do that. Plaintiff's testimony on the other hand is positive that such damage was less than 2 per cent."

Judgment was ordered for the plaintiff, and the defendant appeals.

Section 2, chapter 137 of the Session Laws of 1933 expressly states: "The insurance provided for in this act shall not be effective on crops *struck by hail* before an application is filed with the Hail Insurance Department."

Section 5 of the same act provides: that an "application may be taken . . . at any time before crops are struck by hail. . . . Provided, however, that *in no case shall insurance take effect before such application is actually received in the office of the Hail Insurance Department.*"

In Issendorf v. State, 69 N. D. 56, 283 N. W. 783, we were required to consider this expression—"struck by hail." Therein we held the fact a hailstorm may have passed over the field did not render the crop uninsurable, when the amount of hail that fell was "so small that it did no material damage." If a hailstone or two fell on a field and struck between rows, or even hit some stalks, it could not be said that the crop was struck by hail when no material damage

was done. It is the *crop* that must be *struck* by hail. The purpose of the insurance is to protect a previously undamaged crop against loss by hail; and if the former hailstorm did no damage, caused no loss, then it cannot be said, as a matter of law, that the crop, before being insured, was *struck by hail* within the meaning of the law. Damage to property means actual loss, some substantial damage, some injury by which the value is diminished or destroyed. Weeks v. Shirley, 33 Me. 271, 272; Dudley v. McKenzie, 54 Vt. 685, 687. In this sense the word "damage" is synonymous with "loss."

As stated in Fay v. Parker, 53 N. H. 342, 16 Am. Rep. 270, "Loss is the generic term. Damage is a species of loss." See also Turner v. Woodward, 123 Ga. 866, 51 S. E. 762; Louisville & N. R. Co. v. Mink, 126 Ky. 337, 341, 103 S. W. 294, 295.

Material damage means an actual injury. See Nierodzinski v. Chicago, 284 Ill. App. 598, 602, 1 N. E. (2d) 244, 246.

"Struck by hail," as we noted in the Issendorf Case, means that the hail caused some material damage; but percentage of loss is not the standard. The legislature has not seen fit to set up percentage as the criterion. A percentage definition would be largely a matter of speculation or judgment, and where the legislature has failed to make a more or less arbitrary definition, using percentage as a basis, it is not for this court to lay down any such arbitrary rule; but an opinion as to the percentage of loss, based upon judgment and observation, may be of value in determining whether the crop was in fact struck by hail.

The fact that the crop was injured by the hailstorms in July in such an appreciable amount that the adjusters fixed the damages at $139.90 is of no moment here, provided it be shown that the crop was "struck by hail" prior to the effective date of the policy.

That the crop was damaged visibly by the hail storm of June 23 is beyond dispute. Immediately after the storm the plaintiff Glinz and his son, a youth of sixteen years of age, went over the field to ascertain what damage, if any, had been done. Their testimony is to the effect that they "drove from one end of the field to the other end. Right straight across and around." The plaintiff said he estimated the damage at 2 or 3 per cent; maybe 5. The son was more specific in his testimony. He narrated how he and his father "went over all

the field"—made five or six counts in about nine rows in the fields. Sometimes he counted a hundred or some stalks in the portion selected, and he found the damage to be about 2 per cent or somewhat less. He said: "We just go a ways and stop and get down and count the spears coming up and if we find any broken off, probably count 100 and then count the broken ones in that number." Nothing was said as to how he made the selections.

The plaintiff testified he made no report of this hailstorm, even though he had made out his applications two days before, because he understood he could have no recovery under the applications unless the crop was injured 10 per cent, and that he and his son came to the conclusion the damage did not amount to 10 per cent, but was only from 2 to 5 per cent.

The adjusters testified to the manner of their examination of the crop, and the observation of the fact that the heads were crooked and crinkled. Their testimony shows such crinkled heads were the result of hailstorms prior to July. It is conceded there was no hailstorm prior to July, other than this one of June 23.

After detailing the method of examination for the process of adjustment, these adjusters testified that the crop had been damaged by hail on June 23 from 3 and 4 to 8 per per cent, the percentage for the three storms being about 18 per cent.

It appears that crops on section 22 were damaged by this storm by about 20 per cent. Neighboring fields on all sides of these fields damaged had been insured, and this hailstorm of June 23 damaged crops on sections 21, 24, and 28 also. As these crops had been insured prior to this storm of June 23, losses were paid.

It is clear from the testimony that the crop was struck by hail. The result was visible. The loss was visible. Where the stalks were struck, they were damaged materially. The stems were broken, the head in the shot blade was stunted, deformed, and partially destroyed. This was apparent to the plaintiff himself upon a more or less casual observation; it is made more certain by the method adopted by the son in an attempt to ascertain the percentage, and is confirmed by the testimony of the adjusters. Other than difference of opinion as to percentage, there is no dispute but what the crop was materially damaged to an extent that was visible, observable, understandable. It is clear, there-

fore, that before the application for insurance was received by the department, the crop had been "struck by hail," and, therefore, was uninsurable.

We are not unmindful of the fact that the trial court found for the plaintiff; but it is clear from the memorandum opinion the trial court was being guided by a more or less arbitrary rule of percentage rather than by visible, material damage.

The judgment is reversed and the action is dismissed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.

BURR, Ch. J. In a petition for rehearing, plaintiffs urge that this decision "negatives and nullifies the law on this subject as laid down in the case of Issendorf v. State, 69 N. D. 56, 283 N. W. 783."

In this plaintiffs are mistaken. We cite and follow the Issendorf case. In the latter case, we were required to consider the phrase "struck by hail," and therein pointed out that when the amount of hail was "so small that it did no material damage" to the crop, then the crop was not "struck by hail" within the intent of the law.

In the case at bar, we are not defining the expression "struck by hail." We are considering the expression "material damage." It is the crop as it was on June 23 we have before us.

When material damage is thus caused to the crop, then the crop is struck by hail, no matter what may be the yield thereafter. The two cases are in harmony. The petition for rehearing is denied.

NUESSLE, BURKE, MORRIS and CHRISTIANSON, JJ., concur.