GREAT AMERICAN INDEMNITY CO., a corporation of the State of New York,

Appellant,

*vs.*

THE STATE OF DELAWARE, to the use of VIVIAN WILLCOX MILLS, and MILDRED WILLCOX McCOMB, the sole heirs-at-law of CHARLES J. WILCOX and LUCY TUBBS WILLCOX, both deceased,

Appellees.

*Supreme Court, On Appeal, May 7, 1952.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, Justices, sitting.

*Stewart Lynch* and *Florence E. Freeman,* for appellant.

*John S. Walker* and *Frank J. Miller,* for appellees.

WOLCOTT, Justice, delivering the opinion of the court:

This appeal involves the construction of the provisions of a lost securities bond. The precise question at issue is the right of the appellees (hereinafter referred to as plaintiffs) to recover from the appellant (hereinafter referred to as defndant) reasonable attorneys' fees in connection with litigation arising from the withdrawal of funds representing distribution dividends in a receivership due the plaintiffs.

The facts giving rise to the filing of the bond are as follows:

The plaintiffs are the heirs-at-law of two stockholders of record of a Delaware corporation liquidated in receivership proceedings. Upon the termination of the receivership, funds were ordered deposited in the registry of the Court of Chancery representing distribution dividends due stockholders of record who had not filed claims in the receivership.

Thereafter, on March 6, 1940, on the petition of a firm of New York stock brokers, an order was entered by the Chancellor authorizing the withdrawal from the registry of the court, *inter alia,* the amounts on deposit to the credit of the plaintiff's predecessors in title. The amount due the plaintiffs is $225.85.

The petition of withdrawal alleged the certificates representing the shares upon which the dividends had accrued were lost. Purported assignments of the shares to the petitioners executed in the names of the owners of record were attached to the petition. In compliance with the practice of the Court of Chancery, the petitioners also submitted a lost securities bond with the defendant as surety. Upon these circumstances, the order of withdrawal was entered and the sum of $225.85 ordered paid to the petitioners, the brokerage firm of Steelman and Birkins.

Early in 1949, the plaintiffs presented the stock certificates registered in the names of their predecessors in interest to the Register in Chancery, and requested payment of the distribution dividend on said shares. Payment to the plaintiffs was refused because of the prior withdrawal. After efforts to locate the brokers who had withdrawn the fund in 1940 had failed, the plaintiffs instituted suit against the defendant, the surety on the lost securities bond.

The Chancellor conducted a hearing to determine ownership of the shares of stock entitled to payment of the distribution dividend and held that the plaintiffs were the rightful successors in interest to the shares concerned.

The question of whether or not the defendant, as surety in the bond, was liable for reasonable attorneys' fees for the plaintiffs' attorneys was argued before the Chancellor who, on January 4, 1952, entered judgment against the defendant in favor of the plaintiffs in the amount of $1,257.77, representing the amount due the plaintiffs as successors in interest to the stock entitled to the distribution dividend, interest

òn that sum, out-of-pocket expenses, and the sum of $1,000 as a fee to the plaintiffs' attorneys.

The sole question sought to be reviewed by this appeal is the correctness of the Chancellor's award of attorneys' fees to the plaintiffs' attorneys. The defendant contends that (1) the bond does not impose liability for attorneys' fees, and (2) that if the bond be construed as making the defendant liable for the payment of attorneys' fees, the award of the sum of $1,000 for fees was excessive.

The determination of this appeal requires consideration of the pertinent provisions of the bond to which the defendant is a party. The pertinent provisions are in the following language:

"This is in all respects a joint and several obligation and is for the benefit of each and all of the Obligees named or referred to herein, with the right of each of such Obligees severally to sue hereon in his own name and recover hereunder to the extent of any damage suffered by him under the conditions hereof.

\* \* \* \* \* \*

"Now, Therefore, The Condition Of This Obligation Is Such, that if the said Principal shall well and truly indemnify and keep indemnified each and all of the Obligees named herein, jointly and severally, from and against any and all loss, costs and expenses of whatsoever kind or nature by reason of the payment to the Principal of the aggregate amount due to the individuals, firms or corporations whose names appear in the left hand column of the said Schedule hereto attached, and the amounts due to whom, respectively, are set forth in the right hand column of said Schedule, without the presentation by the Principal, for cancellation, of the stock certificates and/or receipts evidencing the claims of such individuals, firms or corporations as stockholders and/or partly paid stockholders of Commonwealth Hotel Construction Corporation, then this obligation shall be null and void otherwise to be and remain in full force and effect.

"Provided, However, that this bond is executed upon the following express conditions:

"(1) That the Surety shall be liable only for the aggregate of the actual financial losses suffered severally by the Obligees herein whose names appear in the left hand column of the Schedule hereto

attached, by reason of the payment unto the Principal of said aggregate amount without the presentation for cancellation by the Principal of said stock certifificates and/or receipts. * * *"

■ It is the general rule that a court may not order the payment of attorneys' fees as a part of the costs to be paid by the losing party unless the payment of such fees is authorized by some provision of a statute or of the bond sued upon. *In re Equitable Trust Co.*, 27 *Del.Ch.* 60, 30 *A.2d* 271·; 50 *Am.Jur.*, *Suretyship*, § 218; 20 *C.J.S.*, *Costs*, § 218.*a.*, and see an annotation in 126 *A.L.R.*, 1451. It may be observed that there is no statute of the State of Delaware specifically authorizing the Court of Chancery to make an award of attorneys' fees in cases of this type as part of the costs to be paid by a party to the litigation.

■ The defendant argues that because the penalty clause of the bond before us is in approximately the exact amount of the total amount of money due the stockholders whose names and the respective amounts due them appear in the schedule attached to the bond, attorneys' fees may not be allowed as a part of the liability of the defendant under the bond because such allowance might result in imposing a greater total liability upon the defendant than the amount set forth in the penalty clause. Plaintiffs contend that if such is the case, then the provisions of 1935 *Code*, § 4964, relating to the recovery of damages under recognizances and bonds, authorize the application of a "first come, first served" rule to the exhaustion of the penalty amount. As we view the matter, however,·this section of the code is inapplicable to the type of bond before us. By reason of 1935 *Code*, § 4954, which is incorporated by reference into § 4964, it is clearly apparent that the "first come, first served" rule is applicable only in suits upon recognizances and bonds required by law to secure the payment of money required for the faithful execution of an office, duty or trust imposed upon the obligor of the bond. The bond before us does not fall within this category.

Furthermore, the penalty clause being in the almost

exact aggregate of the amount due some twenty-eight individual stockholders seems conclusively to establish that primarily the bond was required for the protection of the actual moneys due the stockholders whose names appear in the schedule to the bond. If a "first come, first served" rule is to be followed and recovery allowed to the first litigants in amounts in excess of the principal due them, then it is obvious the fundamental purpose of indemnification of all the stockholders at least up to the amounts due them will have been defeated, if the total liability of the defendant is confined to the amount of the stated penalty. The application of such a rule would defeat the very purpose of requiring the bond and, certainly, could not have been in the contemplation of either the Chancellor or the parties at the time the bond was given.

The fact, however, that the first litigant may not exhaust the penalty amount to an extent greater than the principal amount due him does not, however, necessarily mean that the defendant may not be held liable to a total amount greater than the penalty amount. The exact measure of the defendant's total potential liability is to be found in the provisions of the bond. We now proceed to a consideration of the extent of that liability.

Initially, it may be observed that although the penalty clause of the bond is in the precise amount of the aggregate of the distribution dividends due the stockholders, the bond requires indemnification of the stockholders "from and against any and all loss, costs and expenses of whatsoever kind or nature" which results from the withdrawal in 1940 of the distribution dividends. Unless the phrase "costs and expenses of whatsoever kind or nature" imposes liability in addition to the actual amount due by reason of the distribution dividend, the language is superfluous. This phrase must have been intended to insure that stockholders entitled to funds wrongfully withdrawn from the registry of the court should not be put to any expense in their subsequent efforts to regain the money rightfully theirs. The very occasion for

the filing of the bond indicates that such must have been the intention. It is obvious that the withdrawal of such funds without any legal right to do so would result in litigation between the rightful claimant to the fund and the withdrawing party. Of necessity, the wronged stockholder has only one means of obtaining his money in the event it is not returned upon request. That means is by the filing of a suit upon the bond. Necessarily, this step cannot be taken without the retention of counsel and the incurring of liability for expenses, including attorneys' fees.

The only conclusion possible to be reached, therefore, is that at the time the bond was prepared, both the principal and surety should have realized that if the alleged facts upon which the money was withdrawn and upon which the bond was required were false, as they were in this cause, litigation was the probability.

It must be borne in mind, also, that the bond before us was required by order of court as a protection for stockholders whose money was in the court's hands and who were not before the court to assert any position contrary to that presented by the petition for withdrawal. Under such circumstances, it was the duty of the court to insure that innocent stockholders wronged by the withdrawal of their money should have adequate protection and, in fact, should be insured complete indemnification at some time in the future. It seems obvious, therefore, that the phrase "costs and expenses" must have been contemplated as embracing the expense of retaining counsel when necessary to do so in order to obtain that which the stockholder was wrongfully deprived of.

This conclusion is strengthened by the concession made at the hearing below that the bond before us admittedly was drawn and prepared by the defendant. When such is the case, it is a familiar rule that every provision of the bond in case of ambiguity shall be taken most unfavorably to the writer of the bond. *Randel v. C. & D. Canal Co.*, 1 *Har.* 151.

If, therefore, there is any doubt as to the inclusion of liability for the payment of attorneys' fees, that doubt must be resolved against the defendant, the drafter of the bond. Furthermore, under some circumstances, the phrase "costs and expenses" is construed to include liability for attorneys' fees. Cf. *Southwest Nat. Bank v. Empoyers' Indemnity Corporation, (Com. App.)* 12 *S.W.2d* 189.

Defendant argues that there is a different measure of liability with respect to the principal in the bond and with respect to it. The argument is based upon the first express condition of the bond quoted hereinabove. The defendant argues that the first express condition was an intentional limitation placed by the surety upon its total potential liability. In effect the defendant finds two measures of liability within the bond, one in the case of the principal and a less broad one in the case of the surety. The argument thus made was not made to the court below, but whether or not, under the rule of *Stephenson v. Commonwealth & Southern Corporation,* 19 *Del.Ch.* 447, 168 *A.* 211, the defendant would be permitted to make it here over the opposition of the plaintiffs, under the circumstances of this appeal, we will permit the argument to be made here for the first time since it is debatable whether the point is in fact a new one, or whether it is merely an additional reason in support of non-liability.

Assuming for the purposes of discussion that the defendant is correct in its theory that the first express condition is intended to be a separate measure of the defendant's liability, we think that fact would not result in a different measure of liability. The condition provides that the defendant shall be liable "only for the aggregate of the actual financial losses suffered severally by the obligees." Defendant argues that this phrase refers solely to the total of the amounts due the stockholders listed in the schedule attached to the bond. In other words, the defendant argues that the liability of the defendant's surety is solely that of the penal amount of the bond and is solely for the distributive amount due the plaintiffs. The argument turns upon the meaning of

the phrase "actual financial losses." Defendant cites a number of cases for the proposition that the words "damages," "loss" or "losses" do not include the expense of attorneys' fees.[1] We do not consider it necessary to discuss in detail the cases cited.

We think the rule of construction referred to above, to the effect that where the drafter of the bond has created an ambiguity in the language of the bond, that ambiguity shall be resolved against the drafter, answers the defendant's argument in this respect. The first express condition of the bond, in view of the purpose for which the bond was given, is not so clear as to, without doubt, exclude the recovery of reasonable attorneys' fees. The defendant participated in the procedure resulting in the taking away of the plaintiffs' money, and a condition of that withdrawal made by the court at the time was complete indemnification by the principal of the innocent stockholder against possible loss so as to restore him to the position he would have been in at the time of withdrawal. The liability of the surety is ordinarily measured by that of the principal, 50 *Am.Jur.*, *Suretyship*, § 30. Under the circumstances of this case, we must conclude that this rule is applicable and that the defendant is, accordingly, liable for reasonable attorneys' fees to a stockholder whose distribution dividend was wrongfully taken from him.

Finally, the defendant argues that by reason of 1935 *Code*, § 4682, liability for attorneys' fees may not be imposed upon it. This code section provides in part as follows:

"In all causes of action * * * [upon] any note, bond, mechanics lien, mortgage, or other instrument of writing, if the plaintiff * * * shall recover judgment * * * he shall also be entitled to recover reasonable counsel fees * * *; providing, however, that such counsel fees shall not * * * exceed five percentum of the amount decreed for principal and interest; and further provided, that

---

[1] *Fay v. Parker*, 53 *N.H.* 342; *Glinz v. State*, 70 *N. D.* 776, 298 *N. W.* 238, 239; *Miles v. United Service Automobile Ass'n.*, (*Tex. Civ. App.*) 149 *S. W. 2d* 233; and *Federal Surety Co. v. Basin Construction Co.*, 91 *Mont.* 114; 5 *P. 2d* 775.

such counsel fees shall not be entered  *  *  *  unless the note, bond, mortgage or other instrument of writing sued upon shall, by the terms thereof expressly provide for the payment and allowance thereof, *  *  *."

While a literal reading of the language of the quoted section of the code would make it appear that it would be applicable in a suit upon the bond before us, reflection will indicate that the Legislature could not have so intended it. The enumeration of types of instruments in the section clearly indicates that the Legislature was intending to deal with suits upon written instruments entered into voluntarily and creating a debtor-creditor relationship. Such instruments all contain an obligation to pay money and, when entered into, are ordinarily not expected to become the basis for a law suit.

The bond with which we are concerned is of an entirely different nature. It was required by court order. It was intended to provide indemnification against loss by reason of the doing of the thing that caused the bond to be demanded. It is in no sense a bond entered into voluntarily in the ordinary course of business affairs. We do not think the Legislature, under these circumstances, could have intended the statute to be applicable. To make it so would be a hindrance to the court in the administration of justice and in the protection of the rights of persons whose interests were before it. The statute is obviously inapplicable to the situation we are dealing with, and when such is the case the courts are not bound to apply the language of the statute literally when to do so would be unjust and foreign to the purpose for which the statute was obviously enacted. *Darling Apartment Co. v. Springer*, 25 *Del.Ch.* 420, 22 *A.2d* 397, 137 *A.L.R.* 803; *Taggart v. Geo. B. Booker & Co.*, 3 *Terry* 128, 28 *A.2d* 690.

We think, therefore, that the defendant is liable to the plaintiffs under the bond for reasonable attorneys' fees. This leaves for decision the question of whether the fees allowed by the Chancellor to the plaintiffs' attorneys were in

fact reasonable. The defendant argues that the amount of such fees must bear a reasonable relation to the subject matter of the litigation, and that it cannot be held liable for a greater attorneys' fee than could the plaintiffs have been held liable by their attorneys if the fees had to be paid by them rather than by the defendant.

It is the general rule that when attorneys' fees are allowed as part of the costs of litigation, and the amount of such fees is not fixed either by statute or by agreement of the parties, the amount of the fees allowed shall be fixed according to the reasonable worth of the attorneys' services, taking into consideration such elements as the standing of the attorney at the bar, the means of the client, the nature and importance of the cause, the time and labor expended on behalf of the client, the amount involved in the litigation, the amount finally recovered, and whether or not the compensation of the attorneys was to be wholly contingent upon success. 14 *Am.Jur., Costs,* § 77; 20 *C.J.S., Costs,* § 218.*e.;* and see *Annotation,* 9 *A.L.R.* 237.

To limit the amount of attorneys' fees by relating them to the amount of principal due the plaintiffs in the cause before us, however, would be a direct contradiction of the measure of liability imposed upon the defendant by the bond it entered into. The defendant has undertaken to indemnify stockholders whose names appear in the schedule attached to the bond in the face amounts of the principal due them and, in addition, in the amount of whatever expenses are required to enable them to obtain that principal amount. Since, as we have pointed out, the obtaining of the principal amounts necessarily involves litigation, the defendant has promised to pay the expenses of that litigation.

If, as the defendant contends, such expenses must bear a reasonable relation to the actual amount of principal involved, the effect of such a rule would be to deny, as a practical matter in some instances, the right to recover the principal due. The schedule attached to the bond before us shows

that the claims of the individual stockholders range from a low of $10.00 to a high represented by the amount in controversy in this litigation. Obviously, the stockholders entitled to $10.00 will obtain no counsel if the fees to be paid such counsel must bear a reasonable relation to the amount involved. We think, therefore, that the promise to indemnify necessarily is a promise to pay counsel fees in a reasonable amount irrespective of the amount sought to be recovered. Any other rule ignores the fundamental purpose for which the bond was given. Necessarily, therefore, the amount of counsel fees is to be fixed in accordance with the general rule but without regard to the principal amount involved in the litigation.

We have carefully considered the record of the hearing upon the question of the amount of the fees to be allowed the plaintiffs' attorneys. From the testimony taken at that hearing, it appears that the plaintiffs' attorneys spent a total of 150 hours working upon the cause, and that 105 of those hours were devoted to briefing and arguing the question of the right of the plaintiffs to recover counsel fees from the defendant.

It seems clear that the Chancellor fixed the amount of the plaintiffs' attorneys' fees primarily upon the basis of the total time spent by the attorneys in the preparation of the trial and argument, not only of the right of the plaintiffs to recover the principal amount due, but also of the right of the plaintiffs to recover attorneys' fees from the defendant. This fact is obvious from the Chancellor's sustaining of objections to questions asked one of the plaintiffs' attorneys in cross-examination designed to elicit information dividing the time spent by the attorney between the two questions.

We think the Chancellor in including compensation for time spent in determining the right of the plaintiffs to recover counsel fees committed reversible error since it was an application of an erroneous measure of liability. There is a distinct difference between the right of the plain-

tiffs to recover fees for attorneys' services designed to recover the principal amount due the plaintiffs, and the right to recover fees for services in connection with the litigation of the question of the right to obtain fees under the bond. In effect, the plaintiffs have two claims they seek to assert against the defendant. The first of these is for counsel fees necessarily incurred in order to obtain the principal amount due them. The second is for counsel fees incurred by reason of the refusal of the defendant to admit its liability with respect to the first, and this claim falls within the usual rule that an indemnitee cannot recover from the indemnitor for counsel fees which do not fall within the express or implied terms of the contract. 42 *C.J.S., Indemnity,* § 13, *p.* 587.

While in a sense plaintiffs' two claims are related, since one grew out of the other, nevertheless, the defendant is liable only within the express undertaking of its bond. This undertaking was for the payment of counsel fees necessarily incurred to recover only the principal amount due the plaintiffs. Consequently, the second claim for counsel fees sought to be asserted by the plaintiffs is not a liability of the defendant under the bond. In cases involving similar factual situations, the recovery of fees for services rendered in suits to recover counsel fees under the provisions of a bond has been refused. *Southwest Nat. Bank v. Employers' Indemnity Corporation,* (*Comm.App.,*) 12 *S.W.2d* 189; *Fidelity & Deposit Co. v. Crouse,* 86 *N.J.L.* 55, 90 *A.* 1026; *U. S. Fidelity & Guaranty Co. v. Falk,* 214 *Minn.* 137, 7 *N.W.2d* 398.

Therefore, the judgment of the Chancellor imposing liability upon the defendant to pay reasonable counsel fees incurred by the plaintiffs in obtaining the principal amount due them will be affirmed, but that part of the judgment fixing the amount of such fees will be reversed and the cause remanded with instructions to the Chancellor to fix counsel fees in an amount which will be reasonable compensation to the plaintiffs' attorneys for their services in obtaining for the plaintiffs the principal amount due them.