208 A.2d 677 (1965)
WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, in its separate corporate capacity and as Trustee under the Will of George P. McNear, Jr., Deceased, Third-Party Plaintiff and Cross-Defendant and Counter-Claim Defendant,
v.
J. Russel COULTER, Trustee under the Will of George P. McNear, Jr., Deceased, Cross-Claimant, and
Elizabeth M. McNEAR, et al., Third-Party Defendants and Counter-Claimants.
Court of Chancery of Delaware, New Castle.
March 22, 1965.
*678 Robert H. Richards, Jr., of Richards, Layton & Finger, and William S. Potter, of Berl, Potter & Anderson, Wilmington, for Wilmington Trust Co.
Clair John Killoran and John VanBrunt, Jr., of Killoran & Van Brunt, Wilmington, and Stuart S. Ball, Richard J. Flynn, James G. Archer, of Sidley, Austin, Burgess & Smith, Chicago, Ill., for third-party defendants and Counter-Claimants.
H. James Conaway, Jr., of Morford, Young & Conaway, Ill., Wilmington, and Philip W. Tone, of Raymond, Mayer, Jenner & Block, Chicago, Ill., for J. Russel Coulter.
David Snellenberg, II, of Killoran & VanBrunt, Wilmington, Guardian ad litem for minor third-party defendants and counter-claimants.
SEITZ, Chancellor:
This is the decision on certain applications for attorneys' fees arising out of litigation which resulted in a surcharge against the corporate trustee.
While the facts are set out at length in the surcharging opinion of this court (Pennsylvania Company v. Wilmington Trust Company, 40 Del.Ch. 567, 186 A.2d 751) and the affirming opinions of the Supreme Court of Delaware (Wilmington Trust Co. v. Coulter (Del.Ch.), 200 A.2d 441), some background is basic to an understanding of the issues herein resolved.
Pennsylvania Company ("Pennsylvania") sued Wilmington Trust Company ("Trust Company") and J. Russel Coulter[1] as co-trustees of the McNear testamentary trusts. It sought specific performance or, alternatively, damages based upon an alleged breach of an agreement dated April 15, 1955 by which the trustees agreed to sell Pennsylvania certain shares of stock of the Toledo, Peoria and Western Railroad ("TP & W") owned by the trusts. The Trust Company filed a third party complaint against the trust beneficiaries seeking, in effect, to be exonerated from any liability in its non-trustee status on the Pennsylvania claims. The individual co-trustee then filed his answer which contained a cross-claim against the Trust Company seeking to require it in effect to pay in its non-trustee ("individual") capacity any sum which Pennsylvania might thereafter recover. The beneficiaries filed their answers to the third party complaint and included therein counterclaims also seeking to hold the Trust Company individually liable for any recovery by Pennsylvania. Subsequently, but without prejudice to the surcharge claims, all parties consented to a settlement between the Trust Company and Pennsylvania by which Pennsylvania was paid $500,000 from the trust. Thereafter the cross-claim and counterclaims came on for trial and resulted in a decision by which the Trust Company, individually, was required to pay $500,000 plus interest to the trust estate.
The court is now concerned with applications for attorneys' fees filed by the attorneys for the individual co-trustee, the attorneys for the beneficiaries and the attorneys for the Trust Company. This is the decision after final hearing.
I first consider the application of the Trust Company that its expenses including counsel fees be assessed in whole or in part against the trust estate.
The Trust Company seeks to justify its application on the theory that the conduct for which it was surcharged was so lacking in culpability that it should not be deprived *679 of indemnification for expenses from the trust estate. The beneficiaries vigorously[2] contend that its application is not allowable under the law or the facts.
When a surcharged trustee seeks reimbursement for attorneys' fees and expenses the court in disposing of the matter, in the final analysis, is called upon to exercise a sound discretion. A denial of such a request does not follow as a matter of law from the mere fact of surcharge. The nature of the breach must be considered. Compare In re Sellers Estate, 31 Del.Ch. 158, 67 A.2d 86.
Looking to the two grounds of surcharge, the question is whether the Trust Company's conduct in the total setting should move this court to exercise its discretion in its favor in connection with its present petition.
Preliminarily, for purposes of clarity only, this court desires to point out that it intended to hold the Trust Company subject to surcharge on two independent grounds. Although the Supreme Court in its first opinion said that this court also supported its surcharge on a third ground, this court had not intended to express a conclusion on the so-called third ground, viz., as to whether the Trust Company was guilty of breach of trust in entering into the so-called April 15 agreement. Rather, this court intended to decide that the Trust Company was liable for not withdrawing from the April 15 agreement at a time when it could have done so with relatively clear legal impunity and because the Trust Company failed during the same period to notify its co-trustee of the substantially higher Hineman offer. This court was affirmed on both of the grounds on which it intended to rely in imposing the surcharge.
I now consider in order the points relied upon by the Trust Company as the basis for the request that the trust fund bear its expenses. It first makes the point that it has been a faithful trustee in all other aspects of the administration of the trusts. This is presumably true but it must not be overlooked that the Trust Company has been paid and is being paid not insubstantial trust commissions for such services.
The Trust Company next urges that the negotiations for the sale of the TP & W stock were difficult and complex and it ultimately obtained what was presumably the best price for it. However, these facts have to be evaluated in the light of other considerations. First, the Trust Company was practically forced against its will to obtain the best price, as the surcharging opinions will reveal. Next, this court allowed the Trust Company a special fee of $175,000, with the approval of the adult beneficiaries, for its work and the services of its counsel in connection with the sale of the TP & W stock. In addition, the former individual co-trustee and the present co-trustee were allowed an aggregate special fee of $175,000 for their services in the same connection.
The Trust Company says it had the advice of counsel at important stages of the transaction following the execution of the agreement of April 15, 1955. This fact, rather than being in its favor is, by implication, a negative factor. Admittedly, the Trust Company did not, after receiving the higher Hineman offer, consult its counsel during the crucial period about the possibility of withdrawing from or postponing the effectiveness of the April 15 agreement. This fact is all the more difficult to understand in view of conferences with counsel during the period on other related matters. Certainly, this was an important stage of the transaction. Thus, the principle of reliance on the advice of counsel is not affirmatively involved in this aspect of the case.
The Trust Company next says that the Pennsylvania claim, which was ultimately *680 settled, involved a close question of law to which it provided a reasonable defense. Conceding this to be so, the claim and the defense were only made "close" by the fact that the Trust Company failed to take appropriate steps to withdraw from its still inchoate agreement with Pennsylvania when it could have done so without any reasonable probability of liability. The Supreme Court so noted in its second opinion. Indeed, the Trust Company never gave its counsel or co-trustee an opportunity to advise it on this issue at a time when it would have been of probable ultimate significance.
I come then to the really important contention of the Trust Company that the conduct for which it was surcharged involved a close question of law which did not include any fraud, self-dealing or active negligence, and justified the Trust Company in defending the surcharge claim.
The Trust Company was surcharged for two independent acts of negligence, viz.:
1. In effect ignoring the substantially higher Hineman offer until after Pennsylvania's board acted, and
2. Failing seasonably to notify its co-trustee of the higher Hineman offer.
Are these acts of negligence of such a character in the circumstances as to dictate an exercise of discretion against the granting of the Trust Company's present petition?
I believe the Trust Company's acts of negligence require the denial of its petition, even though no acts of fraud or self-dealing were involved. I so conclude because the acts for which the surcharge was imposed, in their setting, involved more than mere passivity. The Trust Company was not confronted with a totally new development when the higher Hineman offer was received. It had been "exposed" to his interest and increasing offers for some time. The very magnitude of the offer in relation to the price fixed in the Pennsylvania and Santa Fe agreement of April 15 should have been a signal flag of arresting hue. Yet, the Trust Company did not consult its counsel about this major development until it was too late. It apparently made no attempt, even in its own organization, to determine whether it was then legally bound to Pennsylvania. Certainly, this was negligence when judged by more than mere hindsight. When this factor is combined with the conscious decision not to communicate the much higher offer promptly to its co-trustee, again presumably without consultation with its counsel, the total picture created is one of negligence and resulting loss that cannot be excused as the mere "poor judgment" of an unsophisticated trustee. Rather, the failure to act promptly and consult with its counsel, compounded by its decision not to advise its co-trustee promptly about this vitally important development, constituted negligence for which the Trust Company cannot be partially exonerated, in effect, by allowing payment of the expenses of defending such activity from the trust itself.
Many cases are cited by the parties but I need not discuss them because I believe the discretionary test which I find to be the controlling law here makes the facts as I find and evaluate them of exclusive importance. I have stated why I believe those facts dictate the discretionary conclusion I have reached.
The Trust Company seems to argue that that part of its request should be allowed which relates to the services rendered in resisting the Pennsylvania claim prior to its settlement. Thus, the Trust Company breaks this litigation down into three parts. Part one is the initial period when it was actively opposing the claim of Pennsylvania in this court, on appeal and in the U.S. District Court before settlement. Part two is the period when the surcharge was being tried in this court and part three covers the period of the appeal of the surcharge.
The Trust Company argues that the first part was for the benefit of the trust and *681 the beneficiaries. This is certainly true but it does not constitute an answer here. I say this because this case does not justify the treatment of the fees and expenses incurred as though they arose in the ordinary case of a trustee defending its trust. Here, one of the very breaches of trust which probably occasioned the lawsuit and certainly the resulting surcharge arose from the Trust Company's failure to take action to withdraw from the inchoate April 15 agreement. As the Supreme Court said:
"It therefore follows that the Trust Company from April 15 to April 27 was not bound to a valid contract but could have withdrawn from any commitment during that period, if not with impunity against suit, certainly with impunity against liability for breach of contract. Nevertheless, it did not withdraw nor, so far as the record shows, was there any consideration given to the possibility of withdrawal or an attempt to negotiate a higher price from the Pennsylvania and the Santa Fe. Certainly, the least to be expected of a trustee under the circumstances was that it would seek the advice of its counsel to determine the possibilities inherent in the situation. This, however, was not done. The entire matter was considered to be a closed book."
It follows that the litigation cannot be fragmented for purposes of passing upon the Trust Company's petition. The acts for which it was surcharged pervaded the litigation from start to finish and the petition must be denied in its entirety.
I turn now to the petitions of the co-trustees and the beneficiaries for the allowance of their attorneys' fees and expenses from the Trust Company individually. The Trust Company first resists the applications on the ground that this court lacks jurisdiction to assess such expenses against it individually, contending that such fees can only be assessed against the trust estate. Preliminarily, I take it that the Trust Company is not contending that the court lacks jurisdiction because the Trust Company is not a party in its individual capacity since it has already been ordered in its individual capacity to pay the trust estate the amount of the surcharge. What the Trust Company is saying, in effect, is that absent statute explicitly so providing this court cannot assess attorneys' fees against a trustee in his individual capacity.
The Trust Company relies heavily on the case of In re Dougherty's Will, 49 Del. 273, 114 A.2d 661 (Orphans' Court). It appears that the court there did state that "costs" as used in 10 Del.C. § 5106 may not be considered to include counsel fees. It relied on the Supreme Court opinion in Great American Indemnity Co. v. State, 32 Del.Ch. 562, 88 A.2d 426. The Great American case involved the construction of an indemnity bond and I do not think it was intended to constitute a blanket holding concerning the allowance of counsel fees under the statute or otherwise. I say this because of other Delaware precedent which I now review.
Our Supreme Court has said that the jurisdiction of equity to award counsel fees as costs in a proper case is undoubted. See Maurer v. International Re-Insurance Corporation, 33 Del.Ch. 456, 95 A.2d 827; Mencher v. Sachs, 39 Del.Ch. 366, 164 A.2d 320. And that court has treated them as coming within 10 Del.C. § 5106, Perrine v. Pennroad Corp., 30 Del.Ch. 517, 64 A.2d 412. That statute authorizes the court to make such order concerning costs as is agreeable to equity. Actually it is but a restatement of the existing equity rule. See Bata v. Hill, 37 Del.Ch. 363, 143 A.2d 728, affirmed 39 Del.Ch. 258, 163 A.2d 493. Our Supreme Court did say in Everitt v. Everitt, 37 Del.Ch. 512, 146 A.2d 388: "Ordinary court costs are usually allowed to the prevailing party, but counsel fees as part of allowable costs are exceptions", citing Maurer v. International Re-Insurance Corp., above.
*682 What does one distill from the foregoing cases? First, confining myself solely to equity courts, I conclude that they have jurisdiction or power to assess attorneys' fees as costs. No other principle explains the cases where the counsel fees of the successful party have been assessed against another party or a fund. In the United States, while recognizing that they have the power to do so in a proper case, equity courts have generally denied counsel fees as costs to a successful party. The judicially created exceptions where counsel fees are allowed, whether directly as counsel fees or as being embraced within the term "costs", appear to have been created to apply when the situation or the equities dictate that such burden should not fall on the prevailing party. However, only in the very unusual situation is an exception recognized for the purposes of imposing the counsel fees of the prevailing party on the losing party. The exceptions are more generally recognized and applied where some fund is sought to be assessed, etc. In the ordinary adversary litigation the losing party is not assessed the counsel fees of his opponent unless the action was fraudulent, etc. Compare Hutchinson v. Fish Engineering Corp. (Del.Ch.) 204 A.2d 752.
Granting that historically a trustee's conduct has been of particular concern to courts of equity, nevertheless, courts assess counsel fees against a trustee individually, only when his conduct has been of a gross or inexcusable nature. Thus, it appears to have been done by this court in In re Catell's Estate, 28 Del.Ch. 115, 38 A.2d 466. Therefore, if the facts dictate, the court should certainly not hesitate to make an exception to the general rule.
Turning to the petition of the co-trustee and beneficiaries, can it be said that the Trust Company's breaches of trust were of such a character that the court should exercise a discretion, whether under the statute or otherwise, to assess the petitioners' counsel fees against it individually? The Trust Company was not guilty of fraud, bad faith or the like in connection with the activity for which it was surcharged. Its acts of negligence were not such that they could be approved but at the same time were not the result of intentional wrongdoing or its equivalent. When this factual evaluation is combined with the general rule in this country embodying a great reluctance to assess counsel fees against the losing party, I reach the discretionary conclusion that except to the extent found hereinafter the actions of the Trust Company for which it was surcharged do not justify the granting of these petitions. I so conclude even though, as these petitioners state, the ultimate result is to deplete the trust estate, since their fees are concededly allowable from the trust estate. This is a "burden" which most successful litigants must bear under the applicable general rule in this country. I do not believe the law and the facts permit a different result here. It is not suggested that as to these aspects of the case the court should differentiate between the individual co-trustees' application and that filed by the beneficiaries.
I next consider whether part of the beneficiaries' application should be charged against the Trust Company individually because the beneficiaries were joined as third party defendants by the Trust Company when it and its co-trustee were sued by Pennsylvania.
The beneficiaries contend that there was no reason why they should have been brought into the litigation by the Trust Company at its inception. They point out that the Trust Company and its counsel were quite competent to defend the Pennsylvania claim and that there was no suggestion that the beneficiaries would have been in a position to assert a defense to the Pennsylvania claim which was not available to the Trust Company. In short they say, that they were brought into the action involuntarily by the Trust Company solely for *683 the benefit of the Trust Company. A review of the pleadings would indicate that this is true. The Trust Company added them as parties in order to obtain a judgment exonerating it in the event it was held liable on the Pennsylvania claim.
The Trust Company has not suggested and the court has been unable to find any justifiable basis for the action of the Trust Company in adding the beneficiaries as third party defendants at the outset of the litigation. I do not believe that adding them for purposes of exonerating the Trust Company was justifiable under the circumstances. The Trust Company's action forced the beneficiaries to obtain counsel and actively participate in the litigation at a stage when the Trust Company itself, along with its co-trustee, could have defended the claim without restriction. The point is rendered more graphic by assuming that the Pennsylvania claim against the Trust Company had gone to trial and been rejected. In that event, the expense incurred by the third party beneficiaries would have been incurred without any justification.
I therefore conclude that that portion of the fees and expenses allowable to the beneficiaries which represents services rendered prior to the settlement of the Pennsylvania litigation should be assessed against the Trust Company individually. I do not believe I need attach a legal label to the basis of the Trust Company's personal liability in this instance. I think it is sufficient to say that such action of the Trust Company, as against the beneficiaries of the Trust, was so incompatible with fiduciary standards that it properly falls within the category of exceptions which call for the imposition of the charge against the Trust Company individually. The amount of this charge is fixed later in this opinion.
I turn now to the various applications for allowances and consider the Trust Company's contention that they are excessive.
It appears that counsel for the beneficiaries had no agreement with their clients concerning the payment of counsel fees. In their application for allowance of counsel fees and expenses to their attorneys some of the beneficiaries have shown what they have paid "on account". This showing is required by the opinion of the Supreme Court in Maurer v. International Re-Insurance Corp., above. While I note the amount of these payments in fixing the total allowance, I believe the easiest way to dispose of the pending applications is to fix what I consider to be a reasonable allowance to all the beneficiaries for counsel fees and expenses.
Sidley, Austin, Burgess & Smith of Chicago, which carried the heavy legal burden for most of the beneficiaries, seeks $110,000 plus expenses of $9,244.38. Their Delaware associate, Killoran and VanBrunt who also acted as Guardian ad litem for the minor defendants seek $15,000 and expenses of $193.22.
I think the expenses incurred by both law firms were proper and reasonable and they will be allowed.
As to the counsel fees of the Sidley firm, I think a reasonable allowance, considering the sources from which it will come, would be $100,000. I conclude that the Killoran firm's allowance should be $12,000.
I, of course, cannot control the amount, if any, the beneficiaries care to pay their counsel, in addition to the amount allowed the beneficiaries on the present petition. I do emphasize, however, that my allowances are based on the total services rendered.
The court must next determine, based on my ruling above, what part of the total allowances to the Sidley and Killoran firms should be assessed against the Trust Company individually, growing out of the services required of the beneficiaries' counsel before the settlement of the Pennsylvania claim. This is a difficult matter to resolve on the record made before me. I conclude that 20% of the fees ($22,400), is fairly allocable to that period, and will be payable *684 by the Trust Company, individually. The balance will be payable from the trust estate. If counsel desire promptly to challenge the fairness of this allocation by evidence or otherwise, I will hear them. If not, the allocation will stand. The court will apply the same formula to their expenses unless counsel desire to develop the matter further.
I next consider the application of the individual co-trustee. The expenses of his counsel were reasonable and necessary and will be allowed.
These attorneys seek fees totalling $32,500. I conclude that an allowance from the trust estate of $20,000 to the individual co-trustee's out-of-state counsel, Raymond, Mayer, Jenner & Block, would be reasonable. I further find that an allowance from the trust of $7,000 to his Delaware counsel, Morford, Young & Conaway, would be fair. It must be remembered that the individual co-trustee was required to defend the trust from the very inception of the litigation.
Present order on notice.
NOTES
[1] He replaced the prior individual co-trustee who was involved in the transaction for which the Trust Company was surcharged.
[2] I shall include the individual co-trustee in the "beneficiaries" reference, unless otherwise indicated.