BERTHA E. MAURER,

*vs.*

INTERNATIONAL RE-INSURANCE CORPORATION, a corporation organized and existing under the laws of the State of Delaware.

Appeal of William Prickett from the order of the Chancellor dated January 27, 1953, on the petition of William Prickett for an allowance out of the defendant's estate.

AND

Cross-Appeal of Arthur G. Logan and William D. Denney, Receivers of International Re-Insurance Corporation, from a part of the order of the Chancellor of the State of Delaware dated January 27, 1953, on the petition of William Prickett for an allowance out of the Receivership Estate.

*Supreme Court, On Appeal, March 27, 1953.*

Before SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ.

*William Prickett*, of Wilmington, appellant, pro se.

*Arthur G. Logan*, of Wilmington, for Receivers of International Re-Insurance Corporation.

SOUTHERLAND, Chief Justice, delivering opinion of the court:

These cases concern the propriety of an allowance of counsel fees to appellant for legal services rendered in prosecuting certain creditors' claims in the receivership. The questions which arise are so interwoven with the facts that a succinct preliminary statement of them is difficult. The circumstances are these:

On or about June 16, 1952, appellant filed in the court below a petition for an allowance of counsel fees from the receivership estate. Appellant had rendered valuable services in prosecuting successfully claims against International of certain reinsurance companies that had reinsured risks of International. We shall refer to them as "reinsurance claimants". These claimants asserted a right to share as "policyholders" in a special trust deposit or fund previously established by International for the benefit of its "policyholders". The facts relating to the creation of this fund, and the legal questions that arose concerning its distribution, are fully set forth in our opinion on the merits of the case and need not be repeated here. See 32 *Del.Ch.* 447, 86 *A.2d* 360. It is enough

to say that the receivers undertook to classify the creditors into two classes, "policyholders" and "nonpolicyholders", and to put into the latter category the reinsurance claimants. Certain of these (but not all) retained appellant to resist this classification. The court below upheld it. On appeal this court reversed, holding all such claimants entitled to share in the special deposit. The effect was to benefit alike those reinsurance claimants who were clients of appellant and those who were not.

Some time after the filing of appellant's petition the receivers gave due notice of a hearing thereon. No party in interest appeared in response to the notice. The Chancellor took the matter under advisement and later filed an opinion. See *ante p.* 383, 93 *A.2d* 919. He determined that the fee requested, $25,000, was reasonable and would be allowed. However, he also determined that the fee should be ratably proportioned among the reinsurance claimants who were clients of appellant. As hereafter shown, he treated the petition as one filed in right of appellant's clients for reimbursement of costs and legal expense.

Both the appellant and the receivers have appealed from this order. Appellant contends that the allowance to him was correct but the reimbursement ordered to his clients was wrong. The receivers contend in effect that no allowance whatever should have been made and that the petition should have been dismissed.

Appellant has moved to dismiss the receivers' appeal on the ground that the receivers' arguments are not within their notice of appeal. We think their arguments bear directly on the part of the order appealed from, viz., the allowance to appellant. The motion is denied, and we take up the merits.

The first question that arises concerns the nature of appellant's petition. Was it a petition filed on behalf of his clients, as the Chancellor evidently regarded it, or was it a petition in his own right seeking compensation in addition to fees already paid or contracted for?

On its face the petition appears to be one filed by appellant in his own right for additional compensation. In the first place, appellant set forth certain of the facts with respect to his fee ar-

rangements with his clients, but did not allege all the facts. Obviously complete disclosure would have been necessary to the making of any order reimbursing the clients for expenses and counsel fees. In like manner, such disclosure would have been required to support a claim (not in fact made) that appellant's compensation from his clients was insufficient and that the shares of the other reinsurance claimants in the special fund should be taxed for an additional fee. In the second place, petitioner proposed to credit each client, against the fee to be paid by it, a sum equal to the amount by which its dividend would be reduced by any award of fees to appellant. The result would be the payment of a substantial fee to appellant in addition to those paid or to be paid by the clients. In the third place, the prayer of the petition was for an allowance for services "in determining the proper application" of the general estate or of the special fund.

The receivers evidently regarded the petition as one filed by appellant in his own right for additional compensation. Thus the notice of October 17, 1952, sent to all creditors, states:

"Mr. Prickett's petition is based on the theory that his services were valuable in arriving at a proper decision as to which creditors should share in the fund from which the special dividend was paid."

The proceedings at the hearing before the Chancellor make it clear that appellant was seeking compensation in his own right for services rendered the receivership estate, in addition to compensation from his clients. One of the receivers asked the appellant the following question:

"You are not appearing on behalf of any of your creditors in connection with— you are just appearing personally for your fee?"

To this appellant replied:

"That's right."

Moreover, when the receivers proposed to inquire into the exact amount of fees paid or to be paid by appellant's clients, appellant took the position that such matters were immaterial to an application for fees for "services to the estate". (The Chancellor took this question under advisement, stating in effect that if he should determine full disclosure to be relevant he would require it.)

Finally, appellant himself asserts that his clients did not seek reimbursement and that his petition was intended to be, and was, a petition in his own right for additional compensation "for his services as an aid to the court".

We have set forth these facts in some detail because the Chancellor took a different view of the matter. He treated the petition as one on behalf of appellant's clients for reimbursement of costs of litigation consisting of counsel fees. Because distribution of the special fund had actually been made, he assumed that appellant had received or would receive from his clients full payment of fees contracted for. Accordingly, he held that a part at least of the fee allowed should be allocated among appellant's clients. He did not know, however, how much appellant had received or would receive from his clients. In his opinion, therefore, he reserved to appellant the right, if the compensation received from any client was less than the portion of the allowed fee chargeable to that client, to make a showing of the facts and claim the difference. Appellant made no such showing and the Chancellor entered the order referred to. Paragraph A thereof provides that $25,000 is allowed for legal services rendered by appellant. Paragraph B directs the receivers to pay this sum to the ten reinsurance claimants represented by appellant in proper proportions.

■ We think that the Chancellor was mistaken in treating the petition as a petition filed on behalf of appellant's clients for reimbursement of costs and fees incurred by them, that is, a petition invoking the well-established power of a court of equity, in certain cases, to allow costs and counsel fees to litigants out of a fund before the court. The petition was one for fees out of the estate in addition to fees received or to be received from appellant's clients. The theory of the petition, suggested below and clearly appearing in appellant's briefs in this court, is that his services aided the court in arriving at a correct decision of legal questions before it and should be separately compensated for.

This brings us to the next question. Is appellant entitled to compensation from the receivership estate, in addition to that paid or to be paid by his clients, for services rendered "as an aid to the court"—the services being the same services rendered to them?

The principles governing the allowance of attorneys' fees by courts have been so often announced that one might think it unnecessary to restate them. The case before us, however, suggests that our own decisions touching this matter may have been misunderstood, and that a restatement is in order.

■ We start with the general principle that, apart from statute or contract, a litigant must pay his counsel fees.

"The general and well recognized rule, subject to but few exceptions, is that a litigant must himself defray the costs of representation by counsel." Per Pearson, Vice Chancellor; *In re Equitable Trust Co.*, 27 *Del.Ch.* 60, 30 *A.2d* 271, 272.

■ We are here concerned with the exceptions to this rule. Generally speaking, they arise in connection with the creation, protection or distribution of a common fund or common property subject to administration by the Court of Chancery. The power of the Chancellor to allow counsel fees from such a fund or property, in certain cases and in the exercise of a sound discretion, is well-settled. A frequent occasion for such an allowance is the creation by efforts of one member of a class of a fund that inures to the benefit of all members. Successful minority stockholders' suits and creditors' bills, resulting in the recovery of money or property or the establishment of a lien, are familiar illustrations. In *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.*, 21 *Del.Ch.* 308, 190 *A.* 569, 576, Chancellor Wolcott said:

"It is a principle which courts of equity have long recognized, that a complainant in a creditors' bill who has caused a trust fund to be brought into the court for the benefit of himself and other creditors, should be allowed a reimbursement out of the fund of all his costs and expenses, including fees to his solicitors, on the principle that those who share with him in the benefits of the suit ought in justice to share with him the burden of its prosecution." (*P.* 322.)

See also *Perrine v. Pennroad Corp.*, 29 *Del.Ch.* 423, 51 *A.2d* 327, affirmed (on certain issues) *sub. nom. Brady v. Pennroad Corp.*, 30 *Del.Ch.* 517, 64 *A.2d* 412; *Internal Improvement Fund of Florida v. Greenough*, 105 *U.S.* 527, 26 *L.Ed.* 1157; annotations, 49 *A.L.R.* 1149, 107 *A.L.R.* 749.

Another occasion for the award of counsel fees is the proceeding instituted by a trustee or executor seeking instructions for the proper administration of the trust or estate.

"Where difficulty in the administration of an estate or trust is caused by some ambiguity or obscurity in a will or other instrument [or, we may add, where difficult questions of law arise], the costs or expenses of litigation thereby caused, taxed as between solicitor and client, may be ordered paid out of the fund." *Commissioner of Insurance v. Massachusetts Acc. Co.*, 318 *Mass.* 238, 61 *N.E.2d* 137, 139.

This practice is so well settled in Delaware as to be beyond question. An analogous situation may arise in a receivership. *Penington v. Com. Hotel Const. Corp.*, 18 *Del.Ch.* 238, 158 *A.* 140, involved the construction of the provisions of the corporate charter fixing the relative rights of preferred and common stockholders. Fees of counsel representing one or more stockholders of opposing classes were paid from the receivership estate. In cases of this sort, whether involving trusts, estates, or receiverships, equity awards counsel fees as part of the necessary costs and expenses of administering the fund. This well-settled practice probably flows from the fact that in many such cases the interest of any one litigant is small, and it is just to relieve him of the burden of the costs of litigation, including counsel fees. *Cf. Commissioners of Insurance v. Massachusetts Acc. Co., supra.*

Plaintiffs' costs in interpleader suits furnish another exception. 30 *Am.Jur. "Interpleader"*, § 26.

Finally, there is the case, relatively rare, of the appointment by the court of counsel to uphold the side of a question that no party before the court is willing to advocate. See *Security Trust Co. v. Sharp*, 32 *Del.Ch.* 3, 77 *A.2d* 543, and *cf. Robinson v. Mutual Reserve Life Ins. Co.*, 2 *Cir.*, 189 *F.* 347. In such a case he is properly paid from the fund.

This enumeration of examples of occasions when counsel fees in equity may be allowed is not necessarily all-inclusive. We state them in order to emphasize one aspect of the matter which we think there has been a tendency in our practice to overlook, that is, that such fees are allowed as part of the costs and expenses of a party to litigation. They are not allowed, as appellant contends, for services "as an aid to the court"—except, perhaps, in the rare case last mentioned above. They are awarded as costs, to or for the benefit of the parties.

"[T]he foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the Chancellor to do equity in a particular situation." *Sprague v. Ticonic Nat. Bank*, 307 *U.S.* 161, 59 *S.Ct.* 777, 780, 83 *L.Ed.* 1184.

It is quite true that it is a frequent practice to permit the attorney to apply directly and to make payment of the fee to him directly, and this practice has the approval of eminent authority. *Central R. R. & Banking Co. v. Pettus*, 113 *U.S.* 116, 5 *S.Ct.* 387, 28 *L.Ed.* 915. It is common practice in this state. But this is largely a rule of convenience and does not embody, as appellant appears to suggest, a departure from legal theory. Chancellor Wolcott in *McWilliams, Jr., Co., v. Missouri-Kansas Pipe Line Co., supra,* had before him an application by a stockholders' committee for recovery of expenses in an amount which did not include the committee's legal and engineering fees. These had been separately applied for by the lawyers and engineers themselves. He said:

"Strictly speaking the committee rather than those whom it employed, should be the petitioner for allowances with which to pay the latter, because the charges of the latter are allowable only as they qualify as compensable expenses of the committee which engaged the services." 21 *Del. Ch.* 335, 190 *A.* 582.

See also *Nolte v. Hudson Nav. Co.*, (2 *Cir.*), 47 *F.2d* 166.

No doubt in cases where the client refuses to file a petition the lawyer should ordinarily have a right to do so. *Cf. Swacker v. Pennroad Corp.*, 30 *Del.Ch.* 495, 57 *A.2d* 63. But this is far from saying that a lawyer has a right to counsel fees which is independent of any arrangement with his client.

■ Now appellant's contention comes to just that, namely, that fees paid by his clients have nothing to do with the matter. His right to an allowance from the estate for services "as an aid to the court" stands, says appellant, on an independent basis, separate and distinct from his clients' obligation to pay fees and unaffected by the amount of compensation from them. It is plain that such a rule for the awarding of counsel fees is unjustified and has no foundation in the law. To adopt it would often result in an attorney's being paid twice for the same services. Thus in the instant case the facts suggest the probability that the appellant has already been paid or will be paid by his clients compensation in an

amount equaling or at least approaching the amount awarded by the Chancellor. For reasons of economy there can be no duplication of pay in a receivership to different persons who have performed the same work. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co., supra.* For reasons that strike deeper there can be no such duplication of fees to one attorney. It would be unjust enrichment. If appellant is right, any counsel who has participated in the briefing and arguing of any question affecting the administration of a fund before the court would be entitled to a special fee for serving as an aid to the court, notwithstanding the fact that he had been adequately paid by his client. Such a practice would lead inevitably to a serious evil—the consumption of a large part of the estate in costs and expenses.

Moreover, if appellant is right, it would logically follow that in a case such as this two petitions for counsel fees could be filed, one the client's and one the attorney's. Certainly this would be an anomaly, and it would also saddle the estate with the payment of two fees for the same services. As to this appellant suggests that if counsel for a party is entitled to an allowance as an aid to the court, the client is not entitled to reimbursement, because reimbursement of legal expenses is made only in cases of the creation of a fund benefiting a class of claimants. As we have seen, the taxation of legal costs is not limited to cases of the creation of a fund; there are many other instances when it is ordered. This argument of appellant would lead to the conclusion that a litigant who has incurred legal costs in a case such as this has no right to apportionment of such costs because the court was aided in its decision by the performance of the very services for which the litigant has paid—surely a complete perversion of the equitable principle underlying the whole subject.

In support of his position appellant cites the language of Chancellor Wolcott in the case of *Penington v. Com. Hotel Const. Corp., supra.* Referring to allowances asked for by the solicitors appearing collectively for various groups of stockholders, the Chancellor said:

"These solicitors appeared in this court and on appeal in the Supreme Court, and, *as aids to the courts*, argued important questions that arose in the course of the administration of the estate." 18 *Del.Ch.* 240, 158 *A.* 141. Emphasis supplied.

An examination of the opinion, and of the record in that case, shows that the Chancellor had no thought of basing the allowance on any but well-established principles. Although counsel spoke for groups of stockholders, each was retained by representatives of the class. Record on Appeal, page 56. The language of the opinion relied on by appellant is found in connection with a discussion of the value of the services rendered. Nothing in the case supports appellant's contention that the Chancellor intended by this passing reference to recognize or establish a new or separate theory of compensation to counsel in a receivership.

In *Perrine v. Pennroad Corp.*, *supra*, the *Penington* case was cited to the court in support of a petition of attorneys for certain stockholders who had unsuccessfully opposed the settlement of a derivative stockholders' action. The allowance sought was refused, the Vice Chancellor saying:

"Doubtless the petitioners aided the court in arriving at its conclusion, but that may be said of most attorneys representing losing causes." 29 *Del.Ch.* 439, 51 *A.2d* 335.

Appellant relies heavily on the case of *Wallace v. Fiske*, (8 Cir.), 80 *F.2d* 897, 901, 107 *A.L.R.* 726. In that case an attorney, having been awarded by the court a fee against his client, sought to recover from other persons who had benefited from his services. He and his client were apparently at odds. The facts indicate that he asserted that he had been insufficiently paid on the first award and had attempted to file a bill of review with respect thereto which had been denied. The case does not lend support to appellant's theory of an award for services as an aid to the court. Its facts present a situation somewhat analogous to that in *Central R. R. & Banking Co. v. Pettus*, *supra*. That case holds that if compensation paid by certain clients, members of a class, is clearly insufficient, it may be supplemented by an award from others in the same class who have benefited from the services rendered, especially if such supplementation had been contemplated by the client. It is true that *Wallace v. Fiske*, *supra*, contains language which, read literally, would afford some support to appellant's contention that the attorney's claims against the other interests were to be regarded as "separate and distinct" from

his clients' obligation to pay fees. This language must be read in the light of the facts. With due deference to the court that used it, we cannot accept it as a general guide for the awarding of counsel fees from a fund administered by the Court of Chancery. We think that fees paid by the clients are the concern of any court passing upon a requested allowance from a fund under its supervision.

█ In this connection we take occasion to say that when a party or his counsel applies to the Court of Chancery for an allowance of counsel fees from a fund, it is, in our opinion, the imperative duty of the applicant to disclose fully to the court all facts necessary to enable the court to determine the total amount of compensation that counsel will receive; and it is equally the duty of the court to require such disclosure. We do not say this in criticism of appellant or of the court below. Appellant disclosed in this case certain facts which under his theory of the case— advanced, we do not doubt, in perfect good faith—he deemed to be all that were pertinent, and offered to make complete disclosure if the Chancellor should deem it relevant; but it is clear that the course that was taken resulted in confusion. As above stated, the Chancellor assumed the petition to be one for reimbursement of the clients. If full disclosure had been made or required before decision, it is probable that this error would not have occurred. The nature of appellant's application would have clearly appeared.

These observations are made with the full knowledge that our practice in these matters is often informal. We do not suggest that every request for allowances requires a written petition, or that it must be filed by the client. In our practice such applications are often made by counsel directly and often made orally. The matter of procedure is one confided to the sound discretion of the Chancellor. But we do say that full disclosure of fee arrangements with the client is a prerequisite to an allowance from a fund under the control of the court.

Appellant builds another argument upon the principle that the measure of compensation when paid by a private client may be quite different from the measure adopted by a court in awarding fees from an estate. From this appellant argues that what the client

pays is not relevant in making an allowance from the estate. The principle invoked is a sound one. Fees awarded by a court may be smaller than could be expected from private clients, *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co., supra;* or they may be larger, *Hutchinson Box Board & Paper Co. v. Van Horn,* (8 *Cir.*), 299 *F.* 424. But the conclusion appellant seeks to draw does not follow. That an allowance (as in many minority stockholders' suits) may be much larger than the client could pay is not inconsistent with the principle of the equitable awarding of costs as between the parties. On the contrary, it is in recognition of the fact that it is the very purpose of the rule to relieve a party of an unjustly heavy burden and compel a sharing of it by those benefited by his acts. Again, a private client, for reasons of his own, may be willing to pay a much larger fee than a court would award from an estate. In such a case only that amount is awarded which it is equitable for the estate to pay. But to both cases the same principle applies—the equitable apportionment of the costs of litigation. And in both cases the amount of compensation paid by the client is a relevant circumstance.

In the light of the foregoing discussion, it is clear that the basic theory—and the sole theory—of appellant's petition is unsound.

We must therefore conclude that appellant was not entitled to maintain the petition filed below and that it should have been dismissed.

There remains for consideration the effect to be given the judgment in favor of the ten reinsurance claimants that were clients of appellant. They are not parties to this appeal. Have we the right to direct the vacation of this judgment without notice to them?

■ The general rule seems to be that a judgment in favor of a person not a party to the proceeding is void, just as is a judgment against such a person. 1 *Freeman on Judgments,* § 111; 49 *C.J.S., Judgments,* § 28; 30 *Am.Jur. Judgments,* § 35; *Bryan v. Akers,* 177 *Ark.* 681, 7 *S.W.2d* 325, 58 *A.L.R.* 1124; *Bachman v. Sepulveda,* 39 *Cal.* 688; *Williams v. Hamilton's Adm'r.,* 29 *S.W.*

873, 16 *Ky.LawRep.* 794; *Knell v. City of Buffalo*, 54 *Hun* 80, 7 *N.Y.S.* 233; *Dunlap v. Southerlin*, 63 *Tex.* 38; *Johnson v. Block*, (*Tex.Civ.App.*), 46 *S.W.* 85.

In *Dunlap v. Southerlin, supra,* the Supreme Court of Texas said:

"A judgment rendered against a person not before the court would be void, and it is not perceived that a judgment against a defendant in court at the suit of named plaintiffs, upon a cause of action accruing to them alone, in favor of a person in no manner a party to the action, can stand upon any higher ground.

"Courts have no more power, until their action is called into exercise by some kind of pleading, to render a judgment in favor of any person than they have to render judgment against a person until he has been brought within the jurisdiction of the court in some method recognized by law as sufficient; and it never will be presumed, in the face of a record which shows that certain named plaintiffs were seeking and entitled to a judgment, that the court rendered a judgment in favor of some person not shown to be before it seeking relief." 63 Tex. at pages 42–43.

And compare *In re Pingree's Estate*, 82 *Utah* 437, 25 *P.2d* 937, 90 *A.L.R.* 96, holding invalid an order allowing counsel fees to the attorney for one of the parties on the ground, among others, that the attorney was not a party to the proceeding.

The reinsurance claimants in whose favor judgment was rendered were merely claimants in the receivership. They received notice of appellant's petition but neither appeared nor took any position with respect thereto. They had authorized no action on their own behalf. Appellant admittedly did not represent them at the hearing. They have had, we are advised, notice of the pending appeal. The conclusion is that they were not parties to the proceeding on the petition for allowances.

It follows necessarily that the court below was without power to enter a judgment in their favor and that the judgment so entered is void.

For the reasons above set forth the order and judgment of the court below of January 27, 1953, is reversed and the cause is remanded to the Court of Chancery of New Castle County with instructions to vacate the order and judgment and dismiss the petition.