143 A.2d 728 (1958)
Thomas J. BATA; Thomas J. Bata and David H. Graham, as Executors of the Estate of Mary T. Bata; and Western Investment and Trading Company, Limited, a Bermuda corporation, Plaintiffs,
v.
Donald M. HILL, Donald M. Hill, Jr., Donald M. Hill and Donald M. Hill, Jr. as Voting Trustees under Voting Trust Agreement for North River Securities Corporation, a Delaware corporation, dated October 22, 1940; Charles Jucker and Hans Berger, individually, as mandatories in accordance with the law of Switzerland, and as a partnership; North River Securities Corporation, a Delaware corporation; Walter Runge, Louis F. Sperry and Frank A. Seller; Edward N. Goodwin, Nicholas Danforth, A. Turney Savage, Harold J. Faulkner, William F. Clare, Jr., and A. Pennington Whitehead, partners in the practice of law under the firm name of "Goodwin, Danforth, Savage & Whitehead" successor firm to a partnership which practiced law under the firm name of "Campbell, Harding, Goodwin & Danforth"; Edward N. Goodwin and Harold J. Faulkner, as surviving Voting Trustees under a Voting Trust Agreement for Westhold Corporation, a Delaware corporation, dated October 14, 1940; Cagodan Corporation, a New York corporation; Westhold Corporation, a Delaware corporation; New World Investments Limited, a Canadian corporation; Roycan & Co., a Canadian partnership; N. V. Hollandsche Handelmaatschappij Bave, a Dutch Corporation; Per Norgren, as Liquidator of N. V. Hollandsche Handelmaatschappij Bave, a Dutch corporation; N. V. Nederlandsche Schoen-En Lederfabrieken Batabest, a Dutch corporation formerly bearing the name N. V. Schoen-En Lederindustrie Amsterdam; Jan A. Bata; Transoceanique S. A., a Luxembourg corporation; Hans Berger, as Liquidator of Transoceanique S. A., a Luxembourg corporation; and Leader A. G., a Swiss corporation, Defendants.
Court of Chancery of Delaware, New Castle.
June 25, 1958.
*729 Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington; Inzer B. Wyatt, Robert MacCrate and John W. Dickey of Sullivan & Cromwell, New York City, for plaintiffs.
George T. Coulson of Morris, Nichols, Arsht & Tunnell, Wilmington; Henry Cohen and Daniel M. Sandomire of Cohen & Sandomire, New York City, for defendants, Jan A. Bata and North River Securities Corporation.
Thomas Herlihy, Jr., Wilmington, for defendants, Donald M. Hill and Donald M. Hill, Jr., individually and as voting trustees.
Henry A. Wise, Jr., of Wise & Suddard, Wilmington, for defendant, Westhold Corporation.
*730 William Poole of Berl, Potter & Anderson, Wilmington, for Charles Jucker and Hans Berger, individually, as mandatories in accordance with the law of Switzerland, and as a partnership.
The other defendants have either not been served or not appeared.
SEITZ, Chancellor.
After perhaps the longest trial in the history of our state courts it was determined that certain property in the form of stock certificates were owned by the plaintiffs, Thomas J. Bata and the executors of his mother's estate, and not by the defendant, Jan A. Bata. See Bata v. Hill, Del.Ch., 139 A.2d 159. At the time the judgment was presented for entry, certain defendants sought to have this court insert a provision therein reserving the right to file claims after the determination of the proposed appeal. The court determined that all claims should be filed at his time but permitted them to be filed without prejudice to the plaintiffs' right to assert that they came too late and lacked merit as a matter of law.
The first petition to be considered was filed by two of the defendants, Donald M. Hill and Donald M. Hill, Jr. ("petitioners") seeking payment from the successful claimant for certain services rendered in various capacities. They sought in effect to have payment secured by the property in court. The petitioners did not claim ownership of the property involved in the principal dispute but were made parties defendant because they controlled the stock and were governing officials of North River Securities Corporation ("North River"), one of the corporations whose stock was involved.
The plaintiffs (Tom and his mother's estate), who were the prevailing parties in this court, have moved to dismiss and to strike the petition on the ground that it comes too late and on the further ground that the claims are not properly asserted against plaintiffs.
What are the facts? In 1940 the petitioners were employed to take control of North River, a Delaware corporation. Petitioners then entered into a voting trust agreement covering all the stock of North River. By its terms, unless otherwise concluded, the agreement expired October 21, 1950. However, despite its termination, petitioners had voting rights so long as they were the record holders of such stock. Petitioners continued after October 21, 1950, to act as voting trustees in conducting the corporate affairs and, as voting trustees, were the sole stockholders of the corporation. The stock of North River (represented by voting trust certificates), and North River's sole asset (890 Leader bearer shares), were part of the property involved in the principal controversy. In fact, the certificates for such stock are on deposit with the court.
On April 14, 1949, the petitioner, Donald M. Hill, was elected president and the petitioner, Donald M. Hill, Jr., was elected secretary and treasurer of North River. They were also elected two of the three directors and continued as such.
Petitioners also allege that they have been the only attorneys for the corporation and have performed valuable services which they enumerate in the petition.
The petition alleges that down to the present time the petitioners have acted in the aforesaid capacities and have been responsible for safeguarding and maintaining the valuable assets of the corporation. Admittedly, some payments on account have been received by them, but none in recent years.
Petitioners allege that all the interested parties are non-residents of the United States and are presently within the jurisdiction of this court only in connection with the dispute concerning the ownership, inter alia, of North River stock. Consequently, petitioners claim they have no adequate *731 remedy at law for the enforcement of their claim for services unless it is recognized before the property is turned over to the successful principal claimant.
The petitioners seek payment of certain fixed sums for their services as voting trustees for the stock of North River and also as attorneys for and officers and directors of North River. They seek such payments from the prevailing party before the deposited securities are turned over to such party.
Petitioners' first claim is for attorneys' fees. Petitioners are not attorneys in this action. But I shall assume that, being named as individual defendants, the petitioners were in a position to assert such a claim herein. However, it must be asserted against the proper party. That poses a problem here. There is no suggestion that these services were rendered directly to plaintiffs. Indeed, I think it clear that all services rendered, whether as voting trustees, attorneys or officers and directors of North River, were rendered formally to or for North River.
Had the petitioners filed their claim as a cross-claim against North River, when they filed their answer herein, it is evident that in a sense, they would have been suing themselves. I say this because they were then in complete official control of North River. It is obvious that it might have been in the interest of the "owner" of North River to resist such a claim. Yet, the owner could not be known until the merits of the principal controversy had been decided. But, if mere form is not to replace substance, it must be said that the petitioners' claim, as it turned out, is against plaintiffs. I say this because it has been determined in effect that plaintiffs "are" the owners of North River. Plaintiffs themselves recognize this reality by the insertion in their proposed final judgment of a provision that the North River certificates and the certificates for North River's asset (890 bearer Leader shares) are to be delivered to plaintiffs. I conclude that under the circumstances and at this stage the petitioners' claim is properly assertible against plaintiffs.
In any event, even plaintiffs seem to concede that the claim could have been asserted against North River in this action. Thus by amendment the petitioners could assert the claim, alternatively, against North River, unless, as plaintiffs claim, the claim is barred by petitioners' delay in asserting it. Is petitioners' claim barred by delay? Had this claim been asserted before the court's determination of the ownership issue, it would have posed many problems. First of all, in the event it had been filed as a cross-claim against North River, it would not then have been known who had an interest in contesting the claim. Also a question would have arisen as to the party entitled to represent North River. I suspect that the trial of that claim would probably have been deferred pending the decision on the ownership dispute. The fact that, as hereinafter decided, Jan Bata's compensation claim must be tried is also pertinent in considering the delay factor.
The facts just analyzed plus the following facts lead me to conclude that "justice" requires that petitioners be permitted to assert their claim now:
1. Plaintiffs' proposed judgment provides that North River's sole asset is to be delivered directly to them.
2. Plaintiffs are non-residents of the country and will presumably remove the stock from the country.
3. Possibly security may be substituted for the certificates.
Plaintiffs' motion to dismiss and to strike the Hill's petition will be denied. However, the trial of this claim will await the determination of such appeals as are now taken. Needless to say, I express no opinion on the merits. I do note that the Hills' petition can only apply to the North River shares and the 890 shares of Leader.
The next matter to be considered is the application of the defendant, Jan Bata, for *732 compensation. The application recites that the defendant took over the Bata enterprise on July 12, 1932, and administered it completely. The record indicates that he administered it until some time in the '40's when he went to South America for reasons which appear in the principal opinion. The application recites that the activities of the defendant in operating the enterprise were pursuant to the wishes of the decedent, Thomas Bata, and with the acquiescence and consent of the plaintiffs. It is then recited that, accepting arguendo the determination of the court that the defendant was not the owner, he "administered the enterprise as above stated as its trustee". It is then alleged that the property which was the subject matter of this action is a substantial and controlling part of the "estate" administered by the defendant and that the defendant's services were of great benefit to the enterprise and to the property involved in this action; that such services preserved and protected such property and resulted in a substantial enhancement in its value.
The defendant prays that the court determine that he is entitled to compensation for his services in respect of the property involved in this action as a condition to its delivery to plaintiffs.
Plaintiffs have moved to dismiss and to strike the defendant's application on the following grounds:
1. Defendant already has pending in New York a claim for such compensation which is "secured" by certain securities held by defendant representing a minority interest in some of the companies in the Bata enterprise.
2. Defendant was never trustee of the shares in this suit and his claim does not relate to any holding by him of such shares.
3. Jan is barred by his conduct from asserting any claim as trustee.
4. Even as faithful trustee he would have no security interest in the shares in suit.
It is not disputed that in a New York accounting action by plaintiffs against defendant, the defendant has interposed a counterclaim based upon services rendered the enterprise and plaintiffs have put the counterclaim in issue. I emphasize that it is not the same action as the New York action where title to certain Leader bearer shares was determined.
Plaintiffs do not cite any authority which would preclude the defendant from filing his claim for compensation in this action solely because it is part of the subject matter of another action in New York. Chancery Rule 13(a), Del.C.Ann., by implication, suggests that such a claim can also be asserted in this action. The spirit of the rules generally favors the filing of all related claims. I conclude that the existence of the New York counterclaim by defendant does not preclude the assertion of the same claim in this action. At this time we are not concerned with any question of trial priority.
Plaintiffs suggest that because defendant holds shares representing a minority interest in numerous Bata operating companies and because such shares are involved in the New York action, this court should not take cognizance of defendant's claim. Even if we assume, as plaintiffs assert, that defendant is holding the minority shares as "security" for his New York counterclaim I do not see how this is a legal reason for refusing to permit the claim to be asserted here. I shall have more to say later in this opinion concerning such minority shares.
Plaintiffs next say that Jan's failure to assert his claim in this action for more than three years after the commencement of the action and until after this court's decision violates Chancery Rule 13 and is a further recognition by Jan that the New York accounting action is the appropriate proceeding in which to present his claim.
An analysis of this aspect of the problem is fraught with difficulty. In a sense it can be said that in every case where the losing party has bestowed a benefit on the property to be delivered to the successful party, his *733 claim for the benefit bestowed might be said to be covered by the compulsory counterclaim provisions of Rule 13. In other words, it should be asserted as an alternative, albeit inconsistent, claim. However, in another sense it can be said that such parties are primarily concerned about the ownership dispute and only when that issue is resolved does the emphasis switch to the "benefit bestowed" aspect of the matter. In this sense the claim can almost be viewed as one under Rule 13(e) involving claims which have matured or been acquired by the pleader after he has served his pleadings. It seems to me that the foregoing analysis is particularly applicable to the situation presented in this case. I say this because the "benefit bestowed" was almost taken for granted during the years prior to the decision.
I realize that "psychological advocacy" dictated that the primary claim not be apparently "weakened" by the assertion of an inconsistent claim. That obviously has been the governing consideration in the presentation of defendant's case even up to the present time. Thus, defendant desired to preserve the right to assert this claim until the disposition of his appeal. He has filed it at this time because the court ruled that it would be lost if not filed now. I further realize that defendant did assert this claim at the pleading stage in the New York accounting action. But the New York accounting action does not have the import of the present action with respect to control of the enterprise.
On balance, then, whether the claim be viewed as one under Chancery Rule 13(e) or an omitted counterclaim under Rule 13(f), I conclude that "justice" does not require that the claimant be limited to the New York action in asserting this claim. In any event, under Chancery Rule 54(c) a party is granted the relief to which he is entitled even if such relief is not demanded. Conditional relief based upon the existence of "equities" in favor of the losing party would seem to come within this rule. Compare 6 Moore's Fed.Practices (2nd ed.), p. 1210.
I next consider the plaintiffs' claim that defendant was never a trustee of the shares in suit and thus he has no claim as trustee which should be secured by the shares in suit.
I think plaintiffs' argument misses the mark in this instance. Defendant's claim is for services rendered the entire Bata enterprise. Certainly, the shares in suit evidence ownership of a very substantial portion of that enterprise. Defendant did not have possession of the shares in suit but I do not believe this is incompatible with defendant's claim. I say this because defendant's claim as trustee is based upon overall benefit bestowed as the admitted operating head of the enterprise. Certainly, the benefit conferred is reflected in the enhanced value of the property in litigation.
I therefore conclude that plaintiffs' contention does not preclude the assertion of the claim here involved as a condition to delivery.
Plaintiffs next assert that defendant is barred by his conduct from asserting a claim as trustee.
It is ordinarily true, as plaintiffs say, that where a trustee repudiates the trust he is allowed no compensation. See 2 Restatement of Law of Trusts, § 243(d). The numerous cases cited in plaintiffs' brief support this general proposition whether a party be a trustee, agent or corporate officer. However, basically the matter is one within the court's sound discretion. Compare Berner v. Equitable Office Bldg., 2 Cir., 175 F.2d 218; Stevens v. Stevens, 97 N.H. 135, 82 A.2d 418. The issue here is whether defendant's relationship to the enterprise and his conduct warrant the application of the rigid rule relied upon by plaintiffs.
Certain it is that the courts have not automatically applied the principle in all fiduciary *734 situations. For example, the Supreme Court of Pennsylvania in East & West Coast Service Corp. v. Papahagis, 344 Pa. 183, 25 A.2d 339, 341, permitted a manager employed by the plaintiff corporation to recover compensation as a manager of a concession which the court found he had diverted from plaintiff in violation of his fiduciary duty. The court relied upon the statement in 2 Scott on Trusts, § 243 to the effect that the trustee's right to compensation, where there has been a breach of trust, rests in the sound discretion of the court. The court said that the defendant was "entitled not to `commissions' but to remuneration for labor performed".
The factual history of the present case renders it almost unique when one comes to consider the application of equitable principles. Plaintiffs were never able to prove any express trust or other explicit agreement between the testator and the defendant dealing with defendant's relationship to the deceased, to plaintiffs or to the subject matter of this litigation. The court, in determining the merits of this case, in effect inferred that the defendant owed a fiduciary duty to plaintiffs akin to that owed by a trustee or confidential agent. This is important in the compensation field because we are not dealing with a proved express trust or formal agency situation which existed at the outset and which was clearly repudiated. Rather, defendant's obligation to plaintiffs and particularly to young Thomas was a matter which was not clearly defined and while defendant's later conduct is not excused it does not call for the imposition of the extreme penalty.
We must also remember that so far as appears the defendant conducted the affairs of the enterprise with skill and ability, and certainly with the tacit consent of the plaintiffs over many years. Other important facts appear at length in the opinion on the merits, Bata v. Hill, above.
I believe defendant's attitude with respect to the Bata enterprise is somewhat akin to that held by the defendant and described as follows in another case in this court (of much smaller compass):
"This case exemplifies the not unusual situation where a person is brought into a difficult business situation and thereafter works long and hard over a great many years until a remarkable job of remedying that situation has been accomplished. When he beholds all that has been accomplished through his efforts, he feels entitled to a greater reward. So realizing, he attempts to exploit a situation for his personal gain even though he thereby violates his duty as a confidential agent." Phillips v. Willis, 31 Del. Ch. 5, 63 A.2d 171, 178.
I believe the defendant started out with the full realization of his obligation toward the widow and the son of the deceased. However, in time he came to see the wonder he had wrought, and became convinced that he was its owner.
I am persuaded that the defendant's conduct in claiming to be the owner constituted a violation of his duty to the real owners. But under the circumstances just narrated I am convinced that principles of equity require that he be compensated for the valuable services rendered the enterprise. Compare East & West Coast Service Corp. v. Papahagis, above; Phillips v. Willis, above. Of course, the adjustments to avoid duplication of compensation are a matter for later consideration. The same is true as to whether defendant's conduct in resisting plaintiffs' claim should be a factor in reducing the amount of the claim.
I distinguish the cases relied upon by plaintiffs on the grounds that they involved "formal" trust or agency relations or because they did not involve a situation where the equities are as compelling as those here involved. In some of the cited cases the fiduciary was guilty of gross mismanagement of the affairs which he controlled. The opposite is true here.
*735 I conclude that defendant's conduct does not bar him from asserting his present claim by way of a condition to the granting of relief to the plaintiffs.
Finally, plaintiffs claim that even as a faithful trustee Jan would have no security interest in the shares in suit.
I believe that once again plaintiffs' argument misconceives the defendant's basic position. As I understand defendant's application it is based upon the equitable principle that he who seeks equity must do equity. Compare East & West Coast Service v. Papahagis, above. This principle is not dependent upon any in rem claim by defendant. It is true of course that the court found in the decision on the merits that the defendant did not have possession of the assets here involved. But defendant was running the business at least with the tacit approval of the plaintiffs. Looking through form to substance therefore, I think it is evident that defendant's valuable services to the "enterprise", using that term loosely, are reflected in the enhancement of the value of the assets which are subject to this court's ownership determination. This being so, it does not strain equitable principles to condition the delivery of such property to plaintiffs upon the payment of the reasonable value of the defendant's services after considering all pertinent factors. Moreover, it may well be that plaintiffs can substitute other security for the property involved in the principal dispute.
In reaching my conclusion I do not deem it necessary to comment on any argument based upon the manner in which executive profit sharing accounts were handled by the company while defendant was in control.
One matter remains for consideration. Defendant's claim, in effect, covers those services rendered the Bata "enterprise", so-called. The enterprise embraced a great many corporations and defendant admittedly has in his possession certificates or other evidence of ownership interest in those corporations. I believe that the granting of permission to defendant to file his claim should be so conditioned that defendant will not possibly receive duplicate benefit or, by retaining the property, maintain a position which is incompatible with his claim for compensation.
Plaintiffs' motion to dismiss and to strike defendant's claim for compensation will be denied on the condition that the defendant, before the entry of judgment on the merits and within a time to be fixed by the court after consultation with counsel, deposit with the court certificates or other evidence of ownership of all the companies in the Bata enterprise held by him except those where there has been an explicit determination of ownership in defendant's favor by a court of competent jurisdiction. The property covered by prior litigation will be considered in fixing compensation. If counsel cannot agree on the identity of such securities, counsel may consult with the court concerning future procedure.
The next petition to be considered is that filed by defendant, Jan Bata, seeking to have the costs, including his counsel fees, made a charge against the subject matter of the action. Plaintiffs have moved to dismiss defendant's application on the ground that there is no legal basis for the application.
Defendant does not define too sharply the theories upon which he bases his request that the court impose his counsel fees upon the property in court. I believe they are based upon one or more of the following theories:
1. Where the administration or disposition of a trust requires the determination of issues; particularly where such property is subject to the court's control.
2. Where a fund is created which is within the court's control.
3. Where litigation requires the construction of an ambiguous will.
*736 Since there is no suggestion to the contrary, I assume that Delaware law is here controlling. Under that law we start with the principle that ordinarily counsel fees are not even awarded to the prevailing party. Maurer v. International Re-Insurance, 33 Del.Ch. 456, 95 A.2d 827; this is true, a fortiori, as to the losing party. Gottlieb v. Heyden Chemical Co., Del., 105 A.2d 461.
The Delaware statute (10 Del.C. § 5106), authorizing this court to make such order concerning "costs" as is agreeable to equity, is no more than a restatement of the existing equity rule. See Delaware Trust Co. v. Everitt, Del.Ch., 140 A.2d 778; and see Perrine v. Pennroad Corp., 30 Del. Ch. 517, 64 A.2d 412.
We thus look to the non-statutory law to see how the rule should be applied. The most recent authoritative pronouncement of the Delaware Supreme Court is found in Maurer v. International Re-Insurance Co., above. After stating that generally, apart from statute or contract, a litigant must pay his counsel fees, the court went on to say that "We are here concerned with the exceptions to this rule. Generally speaking, they arise in connection with the creation, protection or distribution of a common fund or common property subject to administration by the Court of Chancery". [33 Del.Ch. 456, 95 A.2d 830.] The court mentioned as one of the cases coming within the exception a "proceeding instituted by a trustee or executor seeking instructions for the proper administration of the trust or estate. `Where difficulty in the administration of an estate or trust is caused by some ambiguity or obscurity in a will or other instrument [or, we may add, where difficult questions of law arise], the costs or expenses of litigation thereby cause, * * * may be ordered paid out of the fund.'" The court said that this well settled practice probably flows from the fact that in many such cases the interest of any one litigant is small and it is just to relieve him of the burden of the cost of litigation, including counsel fees.
In order to resolve this matter it is important to restate just what was involved in this litigation. Plaintiffs commenced this action seeking to be declared the owners of stock of two Delaware corporations (North River and Westhold). Defendant, by counterclaim, sought to have himself declared the owner of such stock.
At the court's suggestion and before decision, the certificates for the stock of the Delaware corporations were deposited with the court. The certificates for the 890 bearer shares of Leader, A. G., were also deposited in this court by virtue of a condition imposed by the court. The deposit of the certificates for the 280 bearer Leader shares came about initially through an application by defendant. It was done to make certain that the decision of the court on the ownership claims might not be frustrated in fact by the possibility that these Leader bearer shares might not be available for delivery to the party determined to be owner. Actually, plaintiffs took the steps necessary to see that the 280 bearer shares were deposited. With these facts in mind then, I proceed to defendant's contentions.
Defendant first bases his claim to counsel fees by analogy to the exception which permits the granting of attorney's fees even to the loser where the administration or disposition of a trust requires the determination of issues connected with the property subject to such trust. This was no action by a trustee seeking instructions. On the contrary, it was a true adversary proceeding between two claimants to the same property.
The case of In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126, is relied upon by defendant. That case is inapplicable for several reasons. For example, it involved a case where the administration of a formal trust had broken down because of its ambiguous provisions *737  not our case. Moreover, the litigation was primarily for the benefit of the trust  not our case. Here the parties were in an ownership dispute concerning specific property and were not seeking to assist any other party. Compare In re Equitable Trust Co., 27 Del.Ch. 60, 30 A.2d 271.
But defendant says that in its decision this court, in effect, characterized his relationship to the enterprise, as that of a trustee. Thus, says defendant, the trust exception is applicable. This litigation did not involve issues concerning the administration of a trust. Nor were the assets, trust assets in any formal sense. Moreover, the assets in dispute were not in defendant's custody.
Defendant seems to suggest that because some of the shares of one of the Delaware corporations were subject to a voting trust, (which had expired) the exception is applicable. That trust aspect of the matter had no relevancy to the merits of this litigation.
Defendant next claims that a fee should be allowed by analogy to the exception where a fund is created or brought within the court's control by virtue of the action of the losing party. I fail to find any factual or legal basis for concluding that defendant created or brought a fund within the court's control within the true meaning of that rule. The defendant should have been as much interested as plaintiffs in having the property subject to the court's jurisdiction so that an effective ownership determination could be made. Such was the purpose behind both plaintiffs' and defendant's actions in seeking to have the bearer Leader certificates brought under this court's control. Nor was there any benefit to a class as such.
Defendant next seeks to come within the exception existing where a will contains an ambiguity and such ambiguity must be resolved before property can be distributed. This action was not commenced by or required for the benefit of a fiduciary who needed instructions as to the proper interpretation of a will. It is true that the determination of the case required the court to interpret the will of Thomas Bata, Sr. But the exception, as I understand it from the language in Maurer v. International Re-Insurance, above, does not apply to an independent action between two claimants to property. In any event, it cannot be said that the court is here administering a fund. Nor was defendant acting for the benefit of the estate. This is just one basis for distinguishing the case of In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126, relied upon by defendant.
Defendant has cited other cases but they are all readily distinguishable from the action here involved. For example, Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, was stated to be a variant of the representative suit, clearly not this case.
Since the right of the court to allow an attorney's fee is the exception to the general rule, the burden is upon the party claiming such a fee, particularly a losing party, to show a legal basis for such a claim. I cannot find that the defendant has brought his claim for attorneys' fees within any recognized exception to the rule. Assuming that other exceptions exist, I do not believe this is such a case.
I therefore conclude that plaintiff's motion to dismiss and to strike defendant's petition for the allowance of attorneys' fees from the property involved in this litigation must be granted.
I next consider plaintiffs' petition that the following costs be taxed against the defendant Jan Bata:
1. Safe Deposit Box rental.
2. Interpreter's fee.
3. Fees paid for letters rogatory.
4. Experts' witness fees.
Defendant points out that costs are not necessarily assessed against the losing party. *738 See In re Equitable Trust Co., 27 Del.Ch. 60, 30 A.2d 271. A substantial "equity" may relieve the losing party of this burden.
Should the enumerated costs and other court costs be assessed against defendant? I shall not detail the many factors which in my opinion warrant the court in not assessing them against defendant. They appear in the opinion of the court deciding the principal controversy and bring the case within the exceptions noted in Kennedy v. Emerald Coal & Coke, Del.Ch., 30 A.2d 269.
I conclude that any costs properly allowed shall be assessed against the property in court, or against plaintiffs, if they prefer.
Defendant objects to Paragraph 10 of the proposed judgment which recites as follows:
"(10) Defendant Jan A. Bata is hereby permanently restrained and enjoined from anywhere claiming or asserting, through legal proceedings or otherwise, any ownership of or interest in any of the property which is the subject of this action, namely 1,170 shares of defendant Leader, A. G., 5,084 shares of defendant North River Securities Corporation and 2,200 shares of defendant Westhold Corporation."
Defendant points out that plaintiffs' complaint does not contain a prayer for an injunction. Defendant also argues that plaintiffs must show some threat by defendant to the ownership determination here made before an injunction can be granted. Defendant says that, in any event, the language goes well beyond the protection of ownership and possession of the shares here involved.
Plaintiffs did not explicitly pray for an injunction of the type incorporated in the proposed paragraph 10 of the final judgment. Since there is a prayer for general relief this is not too important. But it is important that plaintiffs have not spelled out any reasons they might have to justify the issuance of an injunction. Thus defendant has not been given an opportunity to challenge plaintiffs' reasons. Unlike the situation in Abercrombie v. Davies, Del. Ch., 131 A.2d 822, the need is not self-evident. Therefore, unless plaintiffs indicate a desire to formalize their application for an injunction by serving and filing an appropriate paper within five days from the date of this opinion, the court will omit the provisions of proposed paragraph 10. If an application is filed the court will confer with counsel concerning future proceedings.
I turn next to the apparent dispute concerning the amount of the supersedeas bond which should be required. Plaintiffs request that the bond be sufficient only to cover the costs assessed against defendant on the condition that an appeal be taken promptly. Under the proposed provisions concerning the granting of a stay, there is assurance of a prompt appeal. Since the supersedeas bond must cover costs on appeal (Supreme Court Rule 22 (4), Del.C.Ann.) I will fix the amount of the bond after hearing counsel as to the estimated costs on appeal. See Supreme Court Rule 25. However, counsel are free to agree upon an amount.
The entry of a final judgment will await the determination of the matter left open by this opinion. The judgment when entered should contain a determination that it is a final judgment on the merits as to all claims which have been fully litigated. Such claims may be identified. See Chancery Rule 54(b).
Plaintiffs' counsel may present an appropriate order on notice.