HARRY D. MENCHER, One of the Defendants Below,
Appellant,

*vs.*

LEAH SACHS, Plaintiff Below,
Appellee,

*and*

SEMINOLE OIL & GAS CORPORATION, MILESTONE DRILLING COMPANY, JOHN ADDISON, HERSCHEL GREENBAUM, HUGH P. MULLEN and HERBERT WILLIAMS, Defendants Below,
Appellees.

IN THE MATTER OF SEMINOLE OIL & GAS CORPORATION.

*Supreme Court, On Appeal, October 14, 1960.*

*William E. Taylor, Jr.,* Wilmington, for appellant.

*Arthur G. Logan* and *C. Edward Duffy,* of Logan, Marvel, Duffy & Boggs, Wilmington, for appellees Leah Sachs and Seminole Oil & Gas Corp.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: We take the following pertinent facts from the Chancellor's opinion and Special Master's report found in 150 A.2d 20.

On April 26, 1958, appellee Sachs, a stockholder of Seminole, filed a petition to compel the holding of a stockholders' meeting, the management having failed to do so.

On July 20 the appellant Mencher, then President of Seminole, negotiated with Milestone Drilling Company a contract for the drilling of oil wells on Seminole's property. Milestone was to receive, among other things 283,000 shares of the common stock of Seminole and a one-half interest in Seminole's leasehold. The shares were to be issued forthwith, and were in fact issued four days before the "deadline" for the stockholders' meeting, then fixed for August 4th.

Thereafter a derivative suit was filed to cancel the shares.

On August 1 the Chancellor appointed a Special Master to conduct the stockholders' meeting. He also later referred the cancellation suit to the master.

At the election Milestone voted its stock for the management. The master held that the stock was illegally issued and rejected the vote cast by Milestone. He held that the opposition slate of directors was elected. The Chancellor overruled all exceptions and sustained the master's findings in both cases.

Milestone surrendered its stock, which was canceled. The contract of July 10 was also terminated, apparently by consent.

The petitioning stockholder's counsel applied for allowances of fees in the two cases. Mencher objected to the requested allowances. The Chancellor allowed $10,000 in the election case and $30,000 in the cancellation suit. Mencher appeals.

Mencher raises three points:

1. That there is no jurisdiction in the Court of Chancery to allow counsel fees in a summary election proceeding under 8 *Del.C.* § 224.

2. That any allowance in the cancellation case should be paid by the body of stockholders and not by the corporation, as ordered by the Chancellor.

3. That there is no "dollar basis" for any finding of benefit to the corporation resulting from the successful suit for cancellation.

1. Preliminarily we note that there is some question whether this point was properly raised below; but we pass this objection in order to deal with the merits.

■ There can be no doubt of the "jurisdiction" of equity to award counsel fees as costs in a proper case. *Maurer v. International Re-Insurance Corp.,* 33 *Del.Ch.* 456, 95 *A.2d* 827. What appellant really means is that this case is not within the exceptions to the general rule, recognized in the *Maurer* case, that a litigant must ordinarily pay his own counsel fees. We enumerated in the *Maurer* case certain exceptions to the general rule, pointing out that the list was not necessarily all-inclusive. The question here is whether this case presents another proper exception.

Appellant argues that there is no precedent for an award of counsel fees by the court to the attorney for the petitioning stockholder in a summary election proceeding. This may be correct, although appellee's attorney refers to a case which he says supplies a precedent. *Perry v. Missouri-Kansas Pipe Line Co., et al.,* 22 *Del.Ch.* 33, 191 *A.* 823, and related litigation. But there is no reported opinion dealing with the allowances in the election case.

■ It is unnecessary to decide whether an allowance of counsel fees is proper in a summary election proceeding in which the relief obtained is limited solely to an order to hold the election. The instant case is quite different. Mencher attempted to issue this large block of stock on the eve of the deadline fixed for the stockholders' meeting. The cancellation suit followed, and the two proceedings were consolidated for hearing before the master and the Chancellor. The election proceeding and the cancellation suit were therefore directly connected. The board of directors did not wish to fix the fee or to submit the matter to the stockholders. We see no objection in this case to the fixation of the allowance by the Chancellor.

Appellant argues that the board had no right to "delegate its right and duty" with respect to the payment by the corporation of fees for services. This is the opposite of a contention, sometimes urged, that the directors should not approve fees requested in derivative stockholders' suits. Cf. *Krinsky v. Helfand,* 38 *Del.Ch.* 553, 156 *A.2d* 90.

We saw no objection, in the cited case, to the approval of the board of an application for fees pending before the court, and we like-

wise see no objection to the decision of the directors in this case to leave the matter with the Chancellor.

We agree with the Chancellor that this case was an appropriate one in which to allow counsel fees.

2. The second objection concerns the allowance of a fee in the cancellation case. Appellant argues that even if a fee was allowable, the order should have directed its payment by the stockholders and not by the corporation, because any benefit from the cancellation of the Milestone stock inured to the benefit of the stockholders as a class.

We cannot understand how the court could make or enforce any such order. Obviously, the payment must be made by the corporation. This is, in effect, a payment by all the stockholders.

There is no substance in this contention.

3. The final objection is that there is no "dollar basis" for measuring any benefit to the corporation resulting from the cancellation of the ilegally issued stock or from the termination of the drilling contract. Cancellation of illegally issued stock is in itself a benefit. Although the benefit may be difficult of evaluation in dollars and cents, it is still a benefit. The same comment is applicable to the benefits resulting from the termination of the drilling contract. There was evidence adduced at the hearing on fees tending to show that the effect of the termination of that contract was to benefit the corporation in restoring to it the one-half interest in the lease transferred to Milestone.

The effect to be given this evidence in valuing the services of the attorney was for the Chancellor. And there was no evidence offered on behalf of the objectors. In these circumstances appellant has no standing to complain. *Krinsky v. Helfand, supra.*

The order of the Court of Chancery is affirmed.